Nathan TURNER, Plaintiff,

v.

HUDSON TRANSIT LINES, INC. and Short Line Terminal Agency, Inc., Defendants.

HUDSON TRANSIT LINES, INC. and Short Line Terminal Agency, Inc., Third–Party Plaintiffs,

v.

Joseph ZOZICHOWSKI and Denise Zozichowski, Third–Party Defendants.

No. 89 Civ. 4252 (PKL).

United States District Court, S.D. New York.

Sept. 27, 1991.

Andrew T. Houghton, Condon & Forsyth, New York City, for plaintiff.

Haydn J. Brill, Morgan, Melhuish, Monaghan, Arvidson Abrutyn & Lisowski, New York City, for defendants.

Mark D. Levi, Law Offices of James P. McCarthy, New York City.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

This is a personal injury action arising out of a motor vehicle collision on the New Jersey Turnpike. Nathan Turner, who was a passenger in a bus involved in the accident, has sued the owner and operator of the bus, alleging that he sustained injuries because the bus was improperly equipped or negligently driven. Jurisdiction is based on diversity of citizenship.

The parties have now submitted cross-motions for sanctions based on purported discovery abuses, including the destruction of evidence. Each motion will be analyzed in turn, together with the relevant factual and procedural background.

### I. Destruction of Maintenance Records

The plaintiff's first motion arises out of the destruction of the bus maintenance records by defendants Hudson Transit Line, Inc. and Short Line Terminal Agency, Inc. (collectively referred to as "Hudson Transit"). The plaintiff contends that the defendants' conduct has deprived him of potentially valuable evidence. Consequently, the plaintiff argues, he is entitled to an "adverse inference" charge: an instruction

that the jury may infer from the destruction of these maintenance records that they would have been detrimental to Hudson Transit's case.

A detailed chronology is important to an understanding of this issue. The accident in which the plaintiff was injured took place on October 8, 1986. On September 23, 1987, the defendants sold the bus that had been involved in the accident to Hausman Bus Sales, a company in Illinois. Affidavit of Andrew T. Houghton dated February 28, 1991, Exh. J. The plaintiff served a state court complaint in this action on October 24, 1988. Petition for Removal at ¶ 1. He then served an Amended Complaint on June 12, 1989, Petition for Removal at ¶ 3, and defendants thereafter removed the action to this Court on the basis of diversity jurisdiction. The Amended Complaint alleged, among other things, that the defendants had failed to provide the bus with good and sufficient brakes. Amended Complaint at ¶ 8.

The plaintiff's efforts to obtain the maintenance records began on December 29, 1989, the date of the plaintiff's Request for Production of Documents. Houghton Aff., Exh. B. Defendants' counsel responded to the request on January 18, 1990, by noting that no such records were in the possession, custody, or control of the defendants. Houghton Aff., Exh. C. Thereafter, in a letter to the Court dated April 27, 1990, defendants' counsel stated that the bus had been sold and that copies of the maintenance records were not retained. Houghton Aff., Exh. D. Yet in a deposition taken on April 19, 1990, the bus driver seemed to indicate that there were two sets of maintenance records, one that accompanied the bus and another that was retained by the defendants. Affidavit of Andrew T. Houghton dated May 9, 1990, Exh. K. On the basis of this testimony the plaintiff moved to compel production of the records. Defendants' counsel responded that he then made further inquiry and was advised by his clients that all maintenance records had been transferred with the bus when it was sold. Affidavit of Haydn J. Brill dated May 17, 1990 at ¶ 10. This was reiterated in the defendants' Response to Plaintiff's Second Request for Production of Documents. Houghton Aff., 2/28/91, Exh. G. On the basis of these representations, I denied plaintiff's application for an order compelling production of the maintenance records. I did, however, permit the plaintiff to pursue discovery regarding the disposition of the records. *See* Order dated May 22, 1990 at ¶ 4.

After seeking unsuccessfully to obtain the maintenance records from the company to which the bus had been sold, the plaintiff took the deposition of Hudson Transit's Director of Maintenance, William Huddleston, on August 28, 1990. He testified that in March or April, 1990, he had been asked by Catherine Jones, a claims administrator for Hudson Transit, whether he had any records for the bus. Houghton Aff., 2/28/91, Exh. O at 14–15. Mr. Huddleston further stated that in response to Mr. Jones' inquiry, he searched the files but found no records. Houghton Aff., 2/28/91, Exh. O at 15–16.

Mr. Huddleston also testified about Hudson Transit's document retention policies. He stated that records are maintained for one year pursuant to Federal Highway Administration regulations. Houghton Aff., 2/28/91, Exh. O at 12. When a bus is sold, Hudson Transit generally transfers the maintenance records to the new owner but keeps copies for six months. Houghton Aff., 2/28/91, Exh. O at 19–20.

Then, on October 29, 1990, in response to the plaintiff's supplemental interrogatories, the defendants issued answers prepared by Mr. Huddleston. Houghton Aff., 2/29/91, Exh. R. This time he stated that he personally transferred the original maintenance records to the new bus owner at the time of the sale. Further, he acknowledged that Hudson Transit had retained a copy of the records. Now, however, Mr. Huddleston admitted that he had personally destroyed these copies in December, 1989.

At the close of discovery, the plaintiff moved for sanctions in connection with the destruction of the maintenance records, and a hearing was held on June 19, 1991.

Remarkably, the defendants did not offer Mr. Huddleston as a witness. Instead, they produced Catherine Jones, the claims administrator who had asked Mr. Huddleston about the records. She testified that she had contacted him in early January of 1990, not in March or April as he had stated. Tr. 11–12.[1] According to Ms. Jones, Mr. Huddleston told her that the maintenance documents had been transferred with the bus but never stated that he had destroyed copies. Tr. 13–14. With respect to Hudson Transit's document retention policy, Ms. Jones stated that records are retained as long as federal regulations require; after that they may be discarded even if someone has asserted a claim or initiated litigation because of an accident. Tr. 18–19. Ms. Jones never advised Mr. Huddleston that the claim at issue here was in litigation. Tr. 19–20.

### A. Authority for Imposing Sanctions

■ Where a party has destroyed evidence, the court's authority to impose sanctions derives from two sources. First, Rule 37(b) of the Federal Rules of Civil Procedure provides that a party that fails to comply with a discovery order is subject to sanctions. Thus, when noncompliance results from the spoliation of evidence, Rule 37(b) comes into play. *See Marketing Specialists, Inc. v. Bruni,* 129 F.R.D. 35, 53 (W.D.N.Y.1989). Even though a party may have destroyed evidence prior to issuance of the discovery order and thus be unable to obey, sanctions are still appropriate under Rule 37(b) because this inability was self-inflicted. *See In re Air Crash Disaster near Chicago, Illinois on May 25, 1979,* 90 F.R.D. 613, 620–21 (N.D.Ill. 1981).

Occasionally, courts are hesitant to rely on Rule 37, believing that it does not deal specifically with the issue of spoliation. For example, in *Capellupo v. FMC Corp.,* 126 F.R.D. 545 (D.Minn.1989), the court found this rule applicable only to " 'normal'

disputes, delays, or difficulties occurring in civil litigation," and refused to apply it to the destruction of documents prior to the initiation of litigation. *Id.* at 550–51 & n. 14. Yet in such cases courts may still impose sanctions, relying on their "inherent power to regulate litigation, preserve and protect the integrity of proceedings before [them], and sanction parties for abusive practices." *Id.* at 551 (citation omitted); *see also National Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556 (N.D.Cal.1987).

Courts thus have the power to sanction the destruction of evidence, whether that authority is derived from Rule 37 or from their inherent powers.[2]

### B. Obligation to Preserve Evidence

■ In determining whether a court should exercise its authority to impose sanctions for spoliation, a threshold question is whether a party had any obligation to preserve the evidence. One court has articulated the general rule as follows:

Sanctions may be imposed on a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

*Wm. T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D.Cal.1984) (citations omitted).

■ Thus, no duty to preserve arises unless the party possessing the evidence

---

1. "Tr." refers to the transcript of the hearing held on June 19, 1991.

2. In addition, where a discovery response fails to acknowledge spoliation because of the failure

to make reasonable inquiry, sanctions may be imposed under Rule 26(g) of the Federal Rules of Civil Procedure. *See National Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. at 554–55.

has notice of its relevance. *See Danna v. New York Telephone Co.*, 752 F.Supp. 594, 616 n. 9 (S.D.N.Y.1990). Of course, a party is on notice once it has received a discovery request. Beyond that, the complaint itself may alert a party that certain information is relevant and likely to be sought in discovery. *See Computer Associates International, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 169 (D.Colo.1990); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 127 (S.D.Fla.1987). Finally, the obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced. *See Capellupo v. FMC Corp.*, 126 F.R.D. at 550–51 & n. 14; *Alliance to End Repression v. Rochford*, 75 F.R.D. 438, 440 (N.D.Ill.1976).

■ Here, Hudson Transit's contention that it had no notice of the relevance of the maintenance records is unavailing. The defendant argues that the central issue in this case is whether the bus was negligently operated, not whether it was properly maintained. Yet the complaint in this action explicitly charges that the bus lacked "good and sufficient brakes." Thus, at least by the time the complaint was served, Hudson Transit was on notice that maintenance records should be preserved.

■ This obligation ran first to counsel, who had a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction. *See Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 18 & n.* (D.Neb.1983). Similarly, the defendants' corporate managers were responsible for conveying this information to the relevant employees. *Id.*

It is no defense to suggest, as the defendant attempts, that particular employees were not on notice. To hold otherwise would permit an agency, corporate officer, or legal department to shield itself from discovery obligations by keeping its employees ignorant. The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials.

*National Ass'n of Radiation Survivors*, 115 F.R.D. at 557–58 (footnote omitted).

Hudson Transit and its counsel failed to meet these obligations, and the excuses offered are without merit. For example, Hudson Transit relies on *INA Aviation Corp. v. United States*, 468 F.Supp. 695 (E.D.N.Y.1979), for the proposition that it is immune from sanctions because it followed governmental regulations in preserving the maintenance records for the required period of time. But in *INA*, the regulations *required* the destruction of documents after a given period. *Id.* at 700. Here, the Federal Highway Administration regulations *permitted* the maintenance records to be destroyed after a particular period but did not conflict with discovery obligations requiring that they be preserved longer. Moreover, the decision in *INA* has been properly criticized:

The court overlooked the real problem. The FAA manual could have provided explicit guidance on exceptions to its destruction procedures for accidents. The manual's inadequate guidance protects federal employees who wish to destroy relevant documents with an intent to keep them out of court and later argue that the act was routine.

Dale A. Oesterle, *A Private Litigant's Remedies for an Opponent's Inappropriate Destruction of Relevant Documents*, 61 Tex.L.Rev. 1185, 1216 (1983). Thus, the government regulations on which Hudson Transit relies do not excuse its destruction of records.

■ Similarly, it is immaterial that Hudson Transit may have believed that the original records would be available from the new bus owner. In fact, this assumption proved unwarranted, since efforts to obtain the records from the new owner have failed. Nor was it a reasonable assumption: according to the government regulations that Hudson Transit itself cites, the new owner would only have been required to preserve the records for a year after the sale in 1987. In any event, a party's discovery obligations are not satis-

fied by relying on non-parties to preserve documents. *See Struthers Patent Corp. v. Nestle Co.*, 558 F.Supp. 747, 765 (D.N.J. 1981).

Hudson Transit, then, had an obligation to preserve the maintenance records, and it failed to do so. It is therefore necessary to consider the appropriate relief.

C. Adverse Inference

■ The plaintiff requests an instruction that the jury may infer from Hudson Transit's destruction of the maintenance records that these documents would have demonstrated that the brakes were not in good order. The concept of an adverse inference as a sanction for spoliation is based on two rationales. The first is remedial: where evidence is destroyed, the court should restore the prejudiced party to the same position with respect to its ability to prove its case that it would have held if there had been no spoliation.

The second rationale is punitive. "Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Nation–Wide Check Corp. v. Forest Hill Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir.1982). Of course, it also serves as retribution against the immediate wrongdoer. "[T]he law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidentially employed to perpetrate the wrong." *Pomeroy v. Benton*, 77 Mo. 64, 86 (1882), *quoted* in *McCormick on Evidence* § 273, at 809 n. 14 (Edward W. Cleary ed., 3d ed. 1984).

■ Particular courts relying exclusively on one or the other of these rationales, may lose sight of the need to consider both principles in determining the appropriate remedy in any specific case. *Cf.* John M. Maguire & Robert C. Vincent, *Admissions Implied from Spoliation or Related Conduct*, 45 Yale L.J. 226, 230–31 (1935) (inconsistency of cases attributed to "intertwining of punitive and remedial ideas"). In

particular, a court should keep both principles in mind when considering the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed.

1. *Intent*

■ The state of mind of a party that destroys evidence is a major factor in determining whether an adverse inference is the appropriate sanction. Where the destruction is intentional—that is, where the destroyer intended to prevent use of the evidence in litigation—courts clearly have the power to invoke such an inference. *See Capellupo*, 126 F.R.D. at 552; *INA Aviation Corp.*, 468 F.Supp. at 700. Indeed, under some circumstances it may be an abuse of discretion not to draw an adverse inference when the party destroying evidence has been shown to have acted willfully. *See Alexander v. National Farmers Organization*, 687 F.2d 1173, 1205–06 & n. 40 (8th Cir.1982). Moreover, the even harsher sanction of judgment by default may be imposed as a sanction for the intentional destruction of evidence if the party seeking the evidence has been severely prejudiced and no lesser sanction would be adequate. *See Computer Associates Int'l, Inc.*, 133 F.R.D. at 169–70; *Capellupo*, 126 F.R.D. at 552; *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 486 (S.D.Fla.1984).

■ While a finding of bad faith, then, is sufficient to trigger an adverse inference, the courts are divided on whether it is necessary. Some say that the adverse inference may be drawn only when it has been shown that the destruction of evidence was intentional. *See Allen Pen Co. v. Springfield Photo Mount Co.*, 653 F.2d 17, 23–24 (1st Cir.1981); *Britt v. Block*, 636 F.Supp. 596, 606–07 (D.Vt.1986); *INA Aviation Corp.*, 468 F.Supp. at 700. Others hold that the negligent or reckless destruction of evidence may warrant such a sanction. *See Pressey v. Patterson*, 898 F.2d 1018, 1024 (5th Cir.1990). The most recent pronouncement by the Second Circuit on this issue is ambiguous. In *Berkovich v.*

*Hicks,* 922 F.2d 1018, 1024 (2d Cir.1991), the Court quoted *INA Aviation Corp.,* 468 F.Supp. at 700, for the proposition that " 'one cannot justify the drawing of . . . an [adverse] inference where the destruction of evidence is unintentional.' " However, by prefacing this statement with the phrase "[o]n the facts of this case," *Berkovich,* 922 F.2d at 1024, the Court implied that in other circumstances it might indeed be appropriate to draw an adverse inference even though the destruction was merely negligent.

That appears to be the conclusion that has been reached in the First Circuit. In *Allen Pen,* 653 F.2d at 23–24, the court seemed to erect bad faith as a prerequisite for drawing an adverse inference. However, in *Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.,* the court stated:

> The [district] court's reluctance to label [the spoliator's] conduct as "bad faith" is not dispositive: "bad faith" is not a talisman, as *Allen Pen* itself made clear when it stated that the adverse inference "ordinarily" depended on a showing of bad faith. Indeed, the "bad faith" label is more useful to summarize the conclusion that an adverse inference is permissible than it is actually to reach the conclusion.

692 F.2d at 219.

Courts that require a showing of bad faith do so on the theory that, without it, the adverse inference lacks logic:

> The litigant's conduct indicates a belief relevant and detrimental to some feature of his case; therefore he holds that belief; therefore his case is in this feature defective. But if the litigant's conduct results only from happy-go-lucky carelessness, and not from specific motive or intention to achieve a specific end, the whole backbone of the formula breaks. The necessary showing of belief is lacking.

Maguire & Vincent, *supra,* at 235 (footnote omitted); *see also Allen Pen Co.,* 653 F.2d at 23–24; *McCormick on Evidence, supra,* § 273, at 809 ("Mere negligence is not enough, for it does not sustain the inference of consciousness of a weak case."). In other words, if a party destroys evidence carelessly, rather than because he believes that the evidence is damaging to him, there is no logical reason for the trier of fact to conclude that the evidence would have been damaging to him.

The flaw in this analysis is that it assumes that the only basis for the adverse inference is this evidentiary syllogism. But this sanction should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is *adverse* to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.[3]

In other contexts, courts commonly preclude a party from introducing certain evidence without any finding that the sanctionable conduct was intentional. For example, a party that fails to identify an expert witness when required to do so by a scheduling order may be precluded from offering the witness's testimony at trial. *See Hull v. Eaton Corp.,* 825 F.2d 448, 451–52 (D.C.Cir.1987). More broadly, a party that fails to seek or comply with a scheduling order may even be subject to judgment by default without inquiry into the party's motives. *See C.E. Bickford & Co. v. M.V. "Elly",* 116 F.R.D. 195, 195–96 (S.D.N.Y.1986). Although there may be no suggestion that these parties failed to comply with scheduling or discovery orders because of any weakness in their own cases,

---

**3.** The adverse inference thus acts as a deterrent against even the negligent destruction of evidence. This is perfectly appropriate: deterrence is not a function limited to punitive sanctions where intent has been demonstrated. In the law of torts, for example, damages for negligence serve to deter such conduct in the future.

they are nevertheless subject to orders of preclusion because their conduct has unfairly prejudiced their adversaries.

The same rationale is applicable here. An adverse inference is the mirror image of a preclusion order: it supplies evidence which was once in the power of one party to produce, but which, because of the conduct of that party, can not now be offered at trial. The evidentiary imbalance caused by the spoliation does not depend on that party's intent; therefore, bad faith, while a significant consideration, should not be an absolute prerequisite to drawing an adverse inference.

In this case, there is insufficient evidence to demonstrate that Hudson Transit deliberately destroyed copies of the maintenance records to prevent their discovery. First, the company does have some document retention policy, though it is geared to federal regulation and is not sensitive to obligations arising from litigation. Second, the documents were destroyed here long after the litigation had commenced, but before Hudson Transit received the document demand. Had the destruction been deliberate, it would more likely have been accomplished either immediately after suit was filed or after the plaintiff sought the documents. Finally, if Hudson Transit believed that the original maintenance records were in fact transferred when the bus was sold, then it would also have known that destruction of the copies would be futile.

Hudson Transit's conduct is nonetheless disturbing. As discussed above, it clearly violated its obligation to maintain these records once the litigation had been filed. In addition, the discovery responses provided by Hudson Transit were misleading at best. Counsel repeatedly represented to the Court that the records had been transferred with the bus and that copies had not been retained. In deposition, Mr. Huddleston testified that he searched for copies of the records in response to the discovery request but found none. Later, however, he admitted in interrogatory answers that he had destroyed the documents *before* they had been requested. This admission renders his deposition testimony wholly incredible, since it is inconceivable that he would have searched *for* documents that he himself had recently destroyed. Likewise, his answers to questions about the existence of the documents were misleading since he never suggested that he had destroyed copies. The only explanation offered by counsel is that Mr. Huddleston was carefully coached for his deposition and answered each question in the narrowest possible terms. (Tr. 32–38). Such an excuse is hardly adequate, and it does little to breed confidence in the conduct of counsel.

Thus, although Hudson Transit did not intentionally destroy evidence, its reckless conduct did result in loss of the records, and its subsequent discovery responses misled the Court and opposing counsel. In order to determine whether an adverse inference is warranted under these circumstances, we must turn to the second critical factor: the content of the lost evidence.

### 2. *Content of the Evidence Destroyed*

Before an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence. Wigmore articulates this requirement as follows:

> The failure or refusal to produce a relevant document, or the destruction of it, is evidence from which alone its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference. In applying this rule, care should be taken not to require anything like specific details of contents, but merely such evidence as goes to general marks of identity.

2 *Wigmore on Evidence* § 291, at 228 (Chadbourn rev. 1979) (emphasis omitted). According to this formulation, the plaintiff here need only show that the documents destroyed were in fact the maintenance records and not some other papers. Hud-

son Transit has, of course, admitted the identity of the documents.

But in fact courts have generally required some greater showing of the content of the destroyed evidence before drawing an adverse inference. In *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914 (2d Cir.1981), for example, the Second Circuit refused to infer from the defendant's destruction of personnel records that it had engaged in discrimination, because "[i]t is unlikely that documents containing evaluations relevant to an earlier time and prior positions would support a charge that [the plaintiff's] dismissal in 1978 was the result of age discrimination." *Id.* at 923–24. Similarly, in *Nation–Wide Check Corp.*, the court drew an adverse inference only after observing that substantial circumstantial evidence supported the facts to be inferred. 692 F.2d at 218–19.

A showing of bad faith by itself is the basis for some inference that the evidence destroyed was detrimental to the destroyer:

> a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document.

*Nation–Wide Check Corp.*, 692 F.2d at 218. Nevertheless, some extrinsic evidence of the content of the evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental.

This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him. *See Stanojev*, 643 F.2d at 924 n. 7 (proper inference to be drawn from failure to call witness is to give strongest weight to evidence already in case favorable to other side: "The jury should not be encouraged to base its verdict on what it speculates the absent witnesses would have testified to, in the absence of some direct evidence."), quoting *Felice v. Long Island Railroad*, 426 F.2d 192, 195 n. 2 (2d Cir.), *cert. denied*, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970); Maguire & Vincent, *supra*, at 240–42.

Here, there is no evidence that the destroyed records would have shown whether the brakes were in good working order. Notations of work on the brakes prior to the accident would not likely have revealed whether any problems were successfully corrected by the time of the accident. Notations after the accident would probably not show how long any problem had persisted. At best, then, the records would have contained ambiguous information. Moreover, the plaintiff has offered no extrinsic evidence to corroborate the suggestion that the brakes were faulty. No affidavit has been offered attributing the accident to the bus's inability to stop. Nor has the plaintiff ascertained that the new bus owner found the brakes to be defective or to have been recently repaired. Thus, the maintenance records themselves would not have shown the brakes to be defective, and therefore no inference to that effect is appropriate. *See Allen Pen*, 653 F.2d at 24.

In order to remedy the evidentiary imbalance created by the destruction of evidence, an adverse inference may be appropriate even in the absence of a showing that the spoliator acted in bad faith. However, where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence. Where, as here, there is no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate.

### D. Costs

Denial of the requested relief does not, however, leave the plaintiff without a remedy. Even when rejecting an adverse inference, courts impose monetary sanctions for the destruction of evidence. *See Harkins Amusement Enterprises, Inc. v. General Cinema Corp.*, 132 F.R.D. 523,

524 (D.Ariz.1990); *Capellupo,* 126 F.R.D. at 553 (double costs and attorneys' fees). Like an adverse inference, an award of costs serves both punitive and remedial purposes: it deters spoliation and compensates the opposing party for the additional costs incurred. Such compensable costs may arise either from the discovery necessary to identify alternative sources of information, *see Allen Pen,* 653 F.2d at 23; *Capellupo,* 126 F.R.D. at 552; *In re Air Crash Disaster,* 90 F.R.D. at 621, or from the investigation and litigation of the document destruction itself. *See Capellupo,* 126 F.R.D. at 552; *National Ass'n of Radiation Survivors,* 115 F.R.D. at 558.

■ Here, an award of costs, including attorneys' fees, is entirely warranted. Hudson Transit unjustifiably destroyed documents after litigation had been commenced, causing the plaintiff to expend time and effort in attempting to track down the relevant information. It then caused the expenditure of additional resources by misleading the plaintiff and the Court regarding the actual disposition of the records.

The attorney time records submitted by the plaintiff include entries relevant both to spoliation and to other discovery abuses which will be discussed below. Accordingly, calculation of the appropriate amount of sanctions will follow analysis of those other issues.

## II. *Plaintiff's Motion for Discovery Costs*

The plaintiff's second motion seeks reimbursement for costs and attorneys' fees incurred in connection with (1) his motion for an order compelling discovery dated May 9, 1990, and (2) the deposition of Mr. Huddleston.

### A. The Discovery Motion

■ Rule 37(a)(4) of the Federal Rules of Civil Procedure provides that if a motion to compel discovery is granted, the party opposing the motion shall pay the movant's costs, including attorneys' fees, "unless the court finds that the opposition to the motion was substantially justified or that oth-

er circumstances make an award of expenses unjust." Here, the plaintiff sought an order compelling Hudson Transit to produce: (1) reports of previous accidents in which the driver of the bus had been involved, (2) records of the sale of the bus, and (3) the maintenance records of the bus. By Order dated May 22, 1990, I directed production of the accident and sales records. On the basis of the representation of defendants' counsel that the maintenance records had been transferred with the bus, I did not order their production, but I permitted the plaintiff to pursue discovery as to their whereabouts. I also denied the plaintiff's application for sanctions at that time, with leave to renew at the close of discovery.

Hudson Transit's opposition to the motion was unjustified in all respects. First, its position that the accident records were irrelevant was unwarranted. While such evidence might not be admissible at trial, it was reasonably likely to lead to evidence related to the cause of the accident and should have been disclosed. *See Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122, 124–25 (S.D.N.Y.1986). Second, with respect to the sales records, defendants' counsel argued that they had not previously been requested. This was simply wrong. *Compare* Affidavit of Haydn J. Brill dated May 17, 1990 at ¶ 12 *with* Affidavit of Andrew T. Houghton dated May 11, 1990, Exh. I. Finally, as discussed above, Hudson Transit's opposition to an order compelling production of the maintenance records consisted of misleading representations about their disposition.

### B. The Huddleston Deposition

■ Rule 37(d) of the Federal Rules of Civil Procedure provides that where a witness designated to testify as to specific matters pursuant to Rule 30(b)(6) fails to appear for deposition, the designating party may be subject to sanctions, including attorneys' fees. Further, a party that fails to provide witnesses knowledgeable in the areas requested in a Rule 30(b)(6) notice is likewise subject to sanctions. *See Thomas*

*v. Hoffman–LaRoche, Inc.*, 126 F.R.D. 522, 524–25 (N.D.Miss.1989).

■ Here, the plaintiff served Hudson Transit with a deposition notice asking the defendants to designate witnesses with knowledge of (1) the sale of the bus, (2) the disposition of sales records, (3) the disposition of maintenance records, and (4) Hudson Transit's document retention policies. *See* Affidavit of Andrew T. Houghton dated October 11, 1990, Exh. G. In response, Hudson Transit produced Mr. Huddleston. He had no knowledge whatever of the circumstances of sale of the bus or the disposition of the sales records. *See* Houghton Aff., 3/11/90, Exh. H. Further, although he did have knowledge of the maintenance records, his testimony in that regard was misleading. Accordingly, the plaintiff is entitled to an award of costs and fees for this aspect of discovery as well.

### C. Amount of Award

The attorney time sheets provided by plaintiff's counsel reflect all time expended on the motion to compel as well as time spent on the Huddleston deposition. *See* Houghton Aff., 3/11/90, Exh. J. A total of 68.6 hours were expended, and at the requested rate of $95.00 per hours, this results in a total fee request of $6,517.00. In addition, the plaintiff incurred expenses of $206.65 for the transcript of the Huddleston deposition. The time spent was commensurate with the work performed, and the requested rates are reasonable. Accordingly, the plaintiff will be awarded a total of $6,723.65 in fees and costs as a sanction for Hudson Transit's discovery abuses and its destruction of evidence.

This award does not compensate the plaintiff for certain work done in connection with destruction of the maintenance records, including the drafting of letters and the preparation of the motion seeking an adverse inference. The plaintiff has submitted no time records with respect to these tasks, and the time expended in drafting letters appears to have been *de minimus*. The work done on the motion for sanctions was more substantial, but the plaintiff did not prevail in obtaining the specific remedy sought. The amount awarded, then, will sufficiently compensate the plaintiff for all of Hudson Transit's transgressions.

### D. Allocation of Liability

■ Both Rule 37(b)(2) and Rule 37(d) of the Federal Rules of Civil Procedure provide that where a party has engaged in discovery abuse, "that party ... or the attorney advising that party or both" may be required to pay reasonable expenses, including attorneys' fees. When both the client and its attorney are responsible for violation of discovery obligations, they may be made jointly and severally liable for any sanctions awarded. *See Goldman v. Alhadeff,* 131 F.R.D. 188, 193–94 (W.D.Wash. 1990); *Chesa International, Ltd. v. Fashion Associates, Inc.,* 425 F.Supp. 234, 238 (S.D.N.Y.), *aff'd,* 573 F.2d 1288 (2d Cir. 1977).

This is such a case. With respect to the destruction of evidence, Hudson Transit's management did not advise its employees of the obligation to maintain relevant documents while litigation was pending. One of its employees provided misleading information to opposing counsel and to the Court. And, of course, that employee actually destroyed evidence. At the same time, defendants' counsel failed to advise his client of the need to retain records during litigation. He then failed to make reasonable inquiry as to the disposition of the records, as a result of which he, too, made misleading representations. Finally, counsel himself suggests that his overzealous preparation of a deposition witness may have contributed to the witness' giving misleading answers.

Hudson Transit and its attorney are likewise jointly responsible for the other discovery abuses. The client failed to produce requested documents and counsel then advanced unwarranted arguments in response to the plaintiff's motion to compel. When required to designate a witness pursuant to Rule 30(b)(6), Hudson Transit produced a deponent with palpably inadequate knowledge of the subject matters identified. At the same time, counsel was un-

aware of the shortcomings in the witness' knowledge because he failed to make adequate inquiry prior to the deposition.

Hudson Transit and its attorney, Haydn J. Brill, shall therefore be jointly and severally liable for the monetary sanctions imposed.

### III. *Hudson Transit's Motion for Discovery Costs*

When the plaintiff made his motion for sanctions, Hudson Transit cross-moved for an award of costs incurred in responding to the plaintiff's motion to quash the deposition of his medical experts. Following the designation of expert witnesses, Hudson Transit served interrogatories pursuant to Rule 26(b)(4)(A)(i), seeking the substance of the anticipated testimony of the plaintiff's experts. Unsatisfied with the responses it received, Hudson Transit then noticed the depositions of these witnesses. Although the plaintiff agreed to produce the experts for deposition, a dispute ensued regarding which party would compensate them, and the plaintiff then moved to quash the subpoenas. Because the plaintiff's interrogatory answers were sparse, additional discovery was warranted, and I therefore ordered the plaintiff to produce his experts for deposition at his own expense unless he provided fully detailed supplementary answers to the interrogatories. *See* Memorandum Endorsement dated December 3, 1990. The plaintiff chose the latter course and supplemented his responses.

While Hudson Transit could be characterized as the prevailing party in this dispute since the plaintiff was compelled to provide additional discovery, the motion to quash was nevertheless substantially justified. Normally the party seeking discovery of an expert is required to pay that witness' fee pursuant to Rule 26(b)(4)(C). Thus, when Hudson Transit demanded that the plaintiff pay its own experts' fees, the plaintiff had every right to seek a ruling from the Court. The fact that I found cause to deviate from the usual principle and ordered that the plaintiff bear the cost of its experts' fees (at least on a conditional basis) does not render the plaintiff's motion

any less justified. Hudson Transit's cross-motion is therefore denied.

*Conclusion*

For the reasons set forth above, the plaintiff is awarded sanctions of $6,723.65 in costs and attorneys' fees for the defendants' destruction of evidence and other discovery abuses. The defendants and their attorney shall be jointly liable for this amount. The defendants' cross-motion for sanctions is denied.

SO ORDERED.