**State of NEW YORK, Plaintiff,**

v.

**Terrence GLEAVE and Ted Gleave, Thomas E. Carter Trucking & Excavating, Inc., and Thomas E. Carter, Defendants.**

No. 94–CV–370C.

United States District Court, W.D. New York.

Oct. 13, 1999.

Timothy Hoffman, New York State Attorney General's Office, Buffalo, NY, for plaintiff.

Terrence Gleave, Ft. Wayne, IN, pro se.

John T. Kolaga, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for defendants.

## DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

In the present motion, defendants Carter Trucking Company and Thomas Carter ("the Carter defendants") move this court to find Ted and Terrence Gleave ("the Gleave defendants") in contempt of court under Rule 37 of the Federal Rules of Civil Procedure. Item 182. The Carter defendants contend that such an order is warranted because the Gleave defendants have flouted several court orders in this action and have engaged in a pattern of obstructive and improper conduct throughout this litigation. *Id.* As relief, the Carter defendants ask the court to dismiss with prejudice the Gleave defendants' claims and affirmative defenses. *Id.*

The contentious discovery phase in this matter has dragged on now for over four years and has been marked by various motions to compel the Gleave defendants' compliance with the Federal Rules of Civil Procedure. Having had an opportunity to consider this matter carefully, the court finds that the Gleave defendants' misconduct does not warrant the severe sanctions requested by the Carter defendants.

### FACTS

On May 13, 1994, the plaintiff State of New York ("the State") commenced this litigation against the Gleave defendants pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Item 1. Issue in the matter was joined on August 19, 1994. Item 4. On November 28, 1994, the State amended its complaint to name the Carter defendants. Item 13. In its amended complaint, the State alleged that either the Gleave defendants or the Carter defendants were liable under CERLCA for the costs of remediating a contaminated site at 300 Mill Street in Lockport, New York.

Item 1, ¶¶ 34–36. On April 26, 1995, the Gleave defendants filed an amended third-party complaint against the Carter defendants and alleged that any damages and costs incurred by the State were solely the responsibility of the Carter defendants. Item 41. Similarly, the Carter defendants filed their own responsive pleadings and made cross-claims against the Gleave defendants. Item 42. As the discovery moved forward, it became evident that there were critical issues of fact regarding whether the Gleave defendants had ever owned or operated the Mill Street site. It was also clear that there were disputes of fact about the nature of the Gleave defendants' business and real estate dealings regarding the Mill Street site. *See, e.g.,* Item 4, ¶¶ 1, 6; Item 48, ¶¶ 9–10.

In light of these disputes, the Carter defendants made discovery demands on the Gleave defendants in June 1995. On October 5, 1995, the Carter defendants moved to compel the Gleave defendants' compliance with those discovery demands under Rule 37 of the Federal Rules of Civil Procedure. *See* Items 51–52. Specifically, the Carter defendants sought to compel the Gleave defendants' answers to certain interrogatories. In addition, the Carter defendants asked that the court order the Gleave defendants to pay for the attorneys' fees that were expended in bringing the motion. *See* Fed.R.Civ.P. 37(a)(4).

On November 21, 1995, the court granted the Carter defendants' motion to compel and directed the Gleave defendants to respond to the disputed interrogatories or to set forth particularized objections. *See* Item 64. Further, the court granted the Carter defendants' request for attorneys' fees in connection with the motion and directed the attorney for the Carters to submit an affidavit itemizing the costs of bringing the motion. *Id.*

On October 8, 1996, the Carter defendants again brought a motion to compel against the Gleave defendants. *See* Items 79–81.[1] That motion to compel concerned the Gleave defendants' failure to submit to depositions. At his deposition, Ted Gleave consistently invoked his Fifth Amendment rights, as well as other objections. *Id.* ¶ 19. Ted Gleave also refused to answer a significant portion of the questions posed to him. *Id.,* ¶ 19. As for Terrence Gleave, the Carter defendants stated that they had experienced difficulty in securing his attendance at a deposition. *Id.,* ¶ 23.

On February 26, 1997, the court granted the Carter defendants' motion and rejected the argument that either Gleave defendant could claim a Fifth Amendment privilege regarding the disputed questions. *See* Item 104, pp. 6–11. The court ordered the Gleave defendants to submit to depositions and to respond to the disputed questions. *See id.* at 10–11. Once more, the court awarded attorneys' fees to the Carter defendants. *See id.* at 19.

In its order filed September 16, 1997, the court calculated how much the Gleave defendants would pay the Carter defendants in attorneys' fees. *See* Item 121. In this order, the court noted: "The Gleave defendants' repeated inability to cooperate in discovery has led to significant waste of the other parties', as well as this court's, time and resources." *Id.* at 3.

By April 1998, the Gleave defendants had not yet paid the Carter defendants for their attorneys' fees as the court had ordered. Consequently, the Carter defendants moved that the court find the Gleave defendants in contempt of court. *See* Items 128–130. On December 23, 1998, the court found the Gleave defendants to be in contempt of court. *See* Item 154. The court was displeased with the Gleave defendants' conduct: "Although the motion was filed in April 1998, the Gleaves have failed to give any reasons for failure to pay the amount ordered by the court." *Id.* at 1. The court granted the Gleave defendants until January 25, 1999, to pay the amounts due. *See id.* The court warned the Gleave defendants that any future violation of court order, such as failure to pay the amounts due, could result in dis-

---

1. At certain points of this litigation, New York State has joined the Carter defendants' motions to compel discovery. For the purposes of the present analysis, the court addresses only those issues arising out of the Carter defendants' motions.

missal of their claims and entry of default judgment against them.[2] *See id.*

The Gleave defendants failed to pay the amounts due by January 25, 1999. Both Ted Gleave, acting *pro se,* and Terrence Gleave moved the court for a stay pending their appeal of the orders awarding attorneys' fees to the Carter defendants. *See* Items 158, 164. Further, Ted Gleave claimed that he could not afford to pay the Carter defendants' attorneys' fees. *See* Item 161. The court, however, found "nothing in the papers supplied to the court which persuades the court to amend its prior order." Item 176, p. 3. Finally, the court noted that neither Gleave defendant had given any reason for his failure to pay the amounts due and held that the "judgments for the ordered amounts may be entered forthwith. . . ." Item 176, p. 3.

On July 9, 1999, upon the Carter defendants' motion for further sanctions, the court ordered that the Gleave defendants explain by affidavit why they had failed to comply with the court's orders. *See* Item 184. The court ordered that the Gleave defendants file these affidavits by August 13, 1999. *See id.* The court explained, "[t]he best course to follow would be for each of them to file a certified financial statement setting forth in detail their assets and liabilities." *Id.*

By order filed August 6, 1999, the court granted the Gleave defendants until August 27, 1999, to submit their financial affidavits. *See* Item 195. However, as of the date of the instant order's issuance, the Gleave defendants have not submitted these affidavits as the court ordered.[3]

2. The court, like the other parties to this action, has often been frustrated and burdened by the Gleave defendants' conduct in this action. As such, this court has on several occasions in the past warned the Gleave defendants that the court could strike their pleadings or enter judgment against them if they continued with their obstructive and dilatory conduct. However, given an opportunity to consider the particular facts of this case more carefully, the court now finds that, in this case, such severe sanctions would not be appropriate, nor would they be in keeping with the Second Circuit's views on due process. *See infra; Marfia v. T.C. Ziraat Bankasi, New*

# DISCUSSION

## I. Rule 37 Sanctions

■ The Carter defendants have brought their present motion pursuant to Rule 37 of the Federal Rules of Civil Procedure. In that motion, they ask that the court find the Gleave defendants in contempt of court. As in the past, the Carter defendants have asked the court to dismiss the Gleave defendants' claims and affirmative defenses.[4] *See* Item 182. However, the court finds that Rule 37 does not provide the proper authority for the court to impose sanctions in this matter.

The language of Rule 37 very clearly sets forth the scope of its application: "If a party . . . *fails to obey an order to provide or permit discovery* . . . , the court in which the action is pending may make such orders in regard to the failure as are just. . . ." Fed. R.Civ.P. 37(b)(2) (emphasis added). The Carter defendants' present motion is predicated on the fact that the Gleave defendants have failed to pay court-ordered sanctions. The court awarded those sanctions to the Carter defendants because they prevailed on two motions to compel against the Gleave defendants. Thus, the court levied those sanctions because of the Gleave defendants' refusal to cooperate with reasonable discovery *requests.*

However, the present motion is not based on the fact that the Gleave defendants have failed to comply with an *order* requiring discovery. It is true that the Gleave defendants have failed to obey the court's various orders directing them to pay attorneys' fees. More recently, they have failed to obey the court's order to provide the court with financial affidavits which were needed to explain why the

*York Branch,* 100 F.3d 243, 248–49 (2d Cir. 1996).

3. In response to the most recent order of the court, the Gleave defendants have both written a number of letters to the court. *See, e.g.,* Items 201, 202. However, neither of the Gleave defendants have submitted, as the court ordered, affidavits containing certified financial statements.

4. The Carter defendants have also asked for an award of the attorneys' fees connected with this motion. Item 182, ¶ 1.

Gleave defendants had not paid the attorneys' fees. Yet, the Gleave defendants have not failed or refused to comply with an order compelling discovery. Thus, it cannot be said that the Gleave defendants have, under Rule 37, "fail[ed] to obey an order to provide or permit discovery." As such, the court cannot direct sanctions against the Gleave defendants under the authority of Rule 37.

## II. The Court's Inherent Power To Impose Sanctions

Notwithstanding the inapplicability of Rule 37 to the present motion, this court does have the inherent power to manage its affairs, facilitate prompt disposition of litigation, and enforce its lawful orders. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 42, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The Second Circuit has recognized that "[a] court has the inherent power to supervise and control its own proceedings and to sanction ... a litigant for bad-faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir.1995). However, the court must use "restraint and discretion" when ordering sanctions against a party pursuant to its inherent powers because the court exercises its inherent powers free from legislative oversight. *See Chambers,* 501 U.S. at 43–44, 111 S.Ct. 2123.

Among the inherent powers of the court is the power to dismiss a party's claims and to strike a party's pleadings for failure to obey court orders. *See e.g., Fonar Corp. v. Magnetic Resonance Plus, Inc.,* 935 F.Supp. 443, 448 (S.D.N.Y.1996) ("under this court's inherent authority ... the court [may in its discretion] ... impose the particularly severe sanction of dismissal of a suit for improper litigation conduct" (quotation omitted)). A court's decision to strike a defendant's pleadings is tantamount to the court's entering judgment against that party. As such, the court must proceed with great restraint and caution in determining whether there are sufficient grounds to grant such dramatic relief. This sense of restraint and caution is

made even more important in light of the fact that the Gleave defendants have, at different times, proceeded *pro se* in this matter. *See e.g., Quiles v. Beth Israel Medical Center,* 168 F.R.D. 15, 19 (S.D.N.Y.1996) (affording *pro se* litigants "special solicitude").

Moreover, the court is mindful that the Second Circuit has articulated a strong preference for resolving disputes on the merits. *See Marfia v. T.C. Ziraat Bankasi, New York Branch,* 100 F.3d 243, 248–49 (2d Cir. 1996). Further, the court of appeals has held that entry of default judgment against an obstructive and noncompliant party is appropriate only in "extreme" circumstances. *See id.*

The cases on which the Carter defendants have relied involve offending parties whose misconduct has impaired or blocked the progress of the action itself. For example, in *Moon v. Newsome,* 863 F.2d 835 (11th Cir. 1989), the court had ordered a *pro se* plaintiff, David Moon, to submit to a deposition in connection with his civil rights action. *Id.* at 837. Mr. Moon appeared at his deposition as ordered, but he violated the court's discovery order when he refused to answer questions. *Id.* The court found that Mr. Moon's "failure to comply with the order directing him to submit to deposition [was] a failure 'to obey an order to provide or permit discovery'" under Rule 37. *Id.* at 837. The court levied monetary sanctions against Mr. Moon for his violation of its discovery order.[5]

For the purposes of the present analysis, it is important to note that Mr. Moon had refused to obey a *discovery order.* By refusing to comply with a discovery order, Mr. Moon concealed substantive evidence from the defendant and thereby prejudiced the defendant's ability to defend himself on the merits. By refusing to pay the sanctions, Mr. Moon had managed to flout the court's discovery order with impunity. Thus, the court was faced with "extreme" circumstances, and was constrained to impose a more severe penalty for his refusal to comply with the discovery order.

**5.** The court of appeals upheld the district court's decision to dismiss Mr. Moon's claims in light of

his stubborn defiance. *See Moon,* 863 F.2d at 839.

This court finds that when courts have employed their inherent power to strike a party's pleadings or to enter judgment against that party, those courts are typically dealing with a party whose misconduct materially and negatively affects the resolution of the action itself. *See Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573 (S.D.N.Y.1996) (involving a party that had produced fraudulent records in response to discovery demands); *Galt v. Sealand Services, Inc.*, 1989 WL 69907 (N.D.N.Y.) (involving a party's failure to comply with court order to obtain new counsel within certain time period); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y.1991) (involving a party that had destroyed evidence before the court even ordered production of such evidence).

Similarly, when a court strikes pleadings or enters judgment against parties pursuant to the Federal Rules of Civil Procedure, the court is typically addressing misconduct that impedes the action's resolution. *See Lediju v. New York City Department of Sanitation*, 173 F.R.D. 105 (S.D.N.Y.1997) (involving sanction under Rule 16 and Rule 37 and a party who willfully failed to obey pretrial scheduling orders); *Hall v. Flynn*, 829 F.Supp. 1401 (N.D.N.Y.1993) (involving sanction under Rule 16 and 37 and a party who inexcusably failed to appear at a discovery conference). Indeed, it seems that whenever a court selects the most severe sanctions, the court does so because the offending party's misconduct impairs the timely and fair litigation of the underlying action.

The Gleave defendants, by their misconduct, have not made a similar attack on the judicial process. Certainly, the Gleave defendants have been dilatory and uncooperative throughout discovery. Yet, they have ultimately submitted to this court's discovery orders. Their conduct on this count stands in marked contrast to the conduct of offending parties in the exemplary cases discussed and cited *supra*.

█ The court acknowledges that the Gleave defendants have refused to comply with the court's orders regarding payment of attorneys' fees and with the court's order to file financial affidavits to explain their non-compliance with such prior orders. Yet, in so doing, the Gleave defendants have not violated orders that go to the heart of the case. Rather, "it is apparent that [their] misconduct ... [has] concern[ed] a peripheral or an incidental matter...." *Cerruti*, 169 F.R.D. at 583. The Gleave defendants' misconduct concerns a collateral, or "peripheral," matter because their misconduct, and the present motion, do not speak to the merits of the action. Specifically, the Gleave defendants have not steadfastly refused to comply with discovery orders, they have not failed to follow scheduling orders on substantive matters, they have not failed to submit papers on dispositive motions, and they have not failed to attend pretrial conferences or scheduling conferences. In short, the court finds that the circumstances surrounding the Gleave defendants' misconduct are not sufficiently extreme to warrant the severe sanction of striking their pleadings or entering judgment against them.

## CONCLUSION

The court finds that the circumstances here are not so extreme or egregious as to warrant the striking of pleadings or the entry of judgment against the Gleave defendants. Thus, the court denies the Carter defendants' motion to the extent that it requests such relief. However, the present motion was necessitated by the Gleave defendants' contempt of an order of this court. As such, the court directs the Gleave defendants to pay the Carter defendants the costs associated with bringing this motion. Again, the Gleave defendants must support their claims that they cannot pay any amounts due by filing with the court affidavits that set forth detailed and certified financial accountings.

By prior order, the court set November 15, 1999, as the date for filing dispositive motions. The Assistant Attorney General stated that he would file a motion for summary judgment by that date. Upon receipt of the papers, the court will file a scheduling order.

So ordered.