Kimberly Ann DONATO and Salvatore M. Donato, Plaintiffs,

v.

John J. FITZGIBBONS, Harold G. Johnson, Thomas Hoffman and Town of Orangetown, Defendants.

Matthew DeYOUNG, Plaintiff,

v.

John J. FITZGIBBONS, Town of Orangetown, Kimberly Donato and Salvatore M. Donato, Defendants.

John J. FITZGIBBONS, Plaintiff,

v.

Kimberly DONATO and Salvatore M. Donato, Defendants.

Nos. 94 Civ. 3654(CLB)(LMS), 95 Civ. 4429(CLB)(LMS).

United States District Court, S.D. New York.

April 1, 1997.

Steven Beldock, Birbrower, Montalbano, Condon & Frank, P.C., New City, NY, for plaintiff Kimberly Donato.

Michael Maggiano, Fort Lee, NJ, for plaintiff Matthew DeYoung.

Robert A. Peirce, White Plains, NY, for defendants Orangetown and Fitzgibbons.

Teresa A. Klaum, Conway, Farrell, Curtin & Kelly, P.C., New York City, for defendant Donato.

Noemi S. Subotovsky, Fellows & Hymowitz, P.C., New City, NY, for plaintiff Fitzgibbons.

## DECISION AND ORDER

LISA MARGARET SMITH, United States Magistrate Judge.

This case has been before me for supervision of discovery since May 24, 1996. The parties consented to have the matter before me for all purposes, pursuant to 28 U.S.C. § 636(c) by Order entered July 15, 1996. Kimberly Donato, as both plaintiff and defendant, and Matthew DeYoung, as plaintiff (hereinafter "proponents") have applied to this Court for sanctions in connection with

defendant Orangetown's [1] destruction of certain evidence, specifically the headlights of the police vehicle that were involved in the automobile crash which is the subject of this action. Proponents seek to have defendants Orangetown and Fitzgibbons' Answers stricken, or a directed verdict against defendants Orangetown and Fitzgibbons, with a trial for damages only; or an instruction to the jury that the headlights were off at the time of the accident. Defendant Orangetown asserts that sanctions, if appropriate, should be limited to monetary sanctions.

As stated in my oral ruling from the bench on March 27, 1997, and for the reasons set forth herein, I grant proponents' motion in part, and impose the sanctions of both payment of proponents' costs in connection with this application and discovery efforts directed to the headlights, and a jury instruction at trial which will permit the jury to draw an adverse inference from defendant Orangetown's destruction of the evidence. I am well aware of the extraordinary nature of this remedy, but I am satisfied that no other sanction is sufficient to both punish the improper conduct and to put the proponents into a fair position for trial. In addition, for the reasons set forth below, I hereby reconsider plaintiff Fitzgibbons' motion for a severance of *Fitzgibbons v. Donato*, 95 Civ. 4429(CLB)(LMS), and that motion is granted.

## RELEVANT FACTS

### Destruction of Evidence and Other Indicia of Bad Faith

■ This case has repeatedly caused me to be concerned about the appearance of bad faith by defendant Orangetown. As noted in my Order of July 16, 1996,[2] relating to certain Orangetown documents submitted to me for *in camera* review, I was distressed by what appeared to me to be possible bad faith on the part of Orangetown in the discovery process. At that time I did not make a finding of bad faith, but I made my concerns in this regard clear. My level of distress has increased since that time, as I have been made aware of increasing numbers of instances [3] where items of discovery have been

1. Although defendant John Fitzgibbons is also represented by counsel for defendant Orangetown, there is no evidence before me that defendant Fitzgibbons had possession of the headlights at any time after the crash, or even that he had access to them. Thus, this Order is directed solely to the actions and failure to act by defendant Orangetown. As noted at page 85, note 10, *infra*, defendant Fitzgibbons is inexorably related to defendant Orangetown, and his fate as a defendant is therefore impacted by my decision with regard to defendant Orangetown, notwithstanding his lack of responsibility for the destruction of the headlights. John Fitzgibbons is, however, represented by separate counsel in his position as plaintiff. Plaintiff Fitzgibbons' action, *Fitzgibbons v. Donato*, 95 Civ. 4429(CLB)(LMS) has previously been consolidated with the actions in which Fitzgibbons is a defendant. Orangetown is not a party to plaintiff Fitzgibbons' action. Plaintiff Fitzgibbons' counsel has joined with defendants Orangetown and Fitzgibbons' counsel in opposition to this motion, and has made several applications in response to the Court's oral ruling. Those applications will be addressed at the end of this Decision and Order.

2. Familiarity with that Order is presumed.

3. (1) In September, 1996, a request was made for production of the police department's entire file on this matter. On October 15, 1996, defendant Orangetown's counsel represented in writing that "all known records and reports pertaining to investigation [sic] have been supplied." On December 12, 1996, counsel represented to me that the entire file had been produced. In fact, on February 21, 1997, counsel at my direction produced *for the first time* certain field notes that could and should have been made available early in the litigation. I find that these field notes contain information which was not contained in the earlier-supplied reports and records, and for which there was no other possible source. The failure to provide the entire file, including the field notes, is without excuse, and is one indicia of bad faith on the part of defendant Orangetown. (2) Also in September, 1996 a request was made for production of a copy of the audiotape of an interview conducted of defendant Fitzgibbons by the police department. On October 15, 1996, counsel represented in writing, that "no such audiotape exists." In fact, on February 25, 1997, when Detective Sergeant Harold Johnson of the Orangetown Police Department appeared for deposition with the original investigative files, the audiotape was "discovered." I find that no transcript, no matter how thorough, can be as illuminating to an attorney preparing for trial as an audiotape, and that the failure to "discover" and produce that audiotape in a timely fashion is without excuse, and is another indicia of bad faith on the part of Orangetown. (3) On numerous occasions the proponents of these motions have applied to this Court for assistance in obtaining discovery from defendant Orangetown,

provided belatedly, after specific statements have been made by Orangetown's counsel denying the existence of those items. Every time one of these instances has taken place, counsel for Orangetown has attempted to explain the lapse, but every explanation has echoed the little boy who claimed that the dog ate his homework. Now, practically on the eve of trial, I am satisfied that my concerns have been completely founded.

This case is scheduled to proceed to trial on April 7, 1997. It has been scheduled for that date since July 12, 1996. On February 20, 1997, at a conference before me, I specifically and emphatically directed Orangetown to make the headlights available for inspection within ten days, as they had failed to make them available on prior dates despite numerous requests. Counsel assured me he would comply with my direction. Six days later, on February 26, 1997, counsel for Orangetown first informed opposing counsel that the headlights from defendant Fitzgibbons' police vehicle were no longer in the possession of the Police Department, and that they had been discarded. Counsel stated, "I have just learned upon inquiry from or to Detective Sergeant Johnson that the police department, insofar as he can determine, is no longer in possession of the headlights." (Hoffman Deposition at 62.)

Incredibly, during Detective Sergeant Johnson's deposition that very morning, he testified at length about his examination of the headlights, and his securing of the headlights and depositing them into the Police Department evidence room, yet he never informed any of the attorneys that the evidence was no longer available. It is abundantly clear, indeed it is admitted, that Detective Sergeant Johnson was fully aware, during his deposition, that the headlights had already been disposed of, and that he knew this as of June 18, 1996.

(Johnson Affidavit at p. 6, ¶ 19.) Despite this, he carefully fashioned his answers on February 26, 1997, to avoid providing this information, while not giving an affirmatively false answer:

Q. I'd like to ask you questions on the chain of custody of the headlamp *from the time you tested it to the present time,* if I may. Who has maintained custody of the headlamps?

A. The headlamp *was put* into evidence in the Orangetown Police Department evidence room.

Q. How has it become secured there? ... How have they become secured there?

A. I turned them over to the custody officer, *and that's where they were supposed to be kept.*

Q. Do you know how they're kept there?

A. On a shelf.

Q. Sir, *when was the last time you saw those lamps?*

A. Probably when I put them into custody.

Q. Do you know where those lamps are presently located?

A. No.

(Johnson Deposition at 231–32) (emphases added.) Since, as we now know, the Detective Sergeant was aware that the lights had already been disposed of at the time he gave these answers, it is clear that his answers were intended to deceive, and that they succeeded.

Only after Detective Sergeant Johnson's deposition was concluded, and after another Detective was deposed, did counsel for Orangetown reveal this crucial information to opposing counsel. The information was given to opposing counsel in a less than candid

discovery which could and should have been promptly and voluntarily provided. These requests have included requests to make the headlights in question available for expert inspection. Defendant Orangetown has repeatedly delayed in responding to such requests, requiring numerous Orders of this Court in order that discovery could be completed, although always representing that the headlights would be made available. All of these instances of misrepresentation took place

after the headlight had, in fact, been destroyed, and none of Orangetown's employees notified counsel or the Court of the destruction, nor did counsel contact anyone at Orangetown to ascertain or insure the state of that headlight. I find that there is no excuse for this series of failures. (4) All of these instances, in conjunction with the issues raised by my July 16, 1996 Order, support my negative conclusions about defendant Orangetown's lack of good faith in this matter.

and straightforward manner,[4] despite a clear mandate expressed in two different courts, as set forth below, that the items were to have been retained.

*Obligation to Preserve Evidence*

Prior to the filing of this case (a portion of which was originally filed in state court), plaintiff DeYoung filed an Order to Show Cause in the Supreme Court, Rockland County, requesting preservation of the damaged vehicles. Respondents to that Order to Show Cause, including the Orangetown Police Department and the Town of Orangetown, apparently consented to the demand for preservation. Justice Bergerman stated, in an Order dated November 1, 1993, that "[t]o the extent the motion requests preservation of materials, respondents do not object to the extent the items requested are in existence and *respondents are directed to continue to preserve the subject items."* (Emphasis added.)

There is no dispute that at the time of Justice Bergerman's Order the headlights of the subject police vehicle were in existence and were in the possession of the Orangetown Police Department. There is also no dispute that counsel for Orangetown made *no* effort[5] at that time to insure that the Court's Order would be complied with in the future, by contacting the officer in charge of the property room at the Orangetown Police Department, Detective Sergeant Terence Hutmacher, or any other officer, or by making any other efforts to comply with his and his client's responsibility.

Counsel's responsibility to safeguard the evidence, which may be imputed to the town of Orangetown, was made even more clear by counsel's stipulation on the record before the Honorable Charles L. Brieant, United States District Judge, in February, 1996, that the headlight had been retained and would be produced, not only at depositions, but also for expert examination. Once again, there is no dispute that at that time the headlights were in existence and in the possession of the Orangetown Police Department. There is also no dispute that counsel again made *no* effort to insure that the stipulation, entered in federal court, would be complied with.

Counsel's responsibility in this regard was reinforced many times during the appearances before me by repeated statements by counsel assuring that the headlights would be made available for inspection. Most incredibly, these statements were made despite the fact that Detective Sergeant Johnson knew as long ago as June 18, 1996, that the headlights were missing. (Johnson Affidavit at p. 6, ¶ 19.) Detective Sergeant Johnson, an experienced and fully trained member of the Orangetown Police Department, was fully aware of the critical nature of this evidence in connection with this litigation, and yet he failed to inform counsel of this crucial problem. At that time, shortly after it is claimed that the headlights had been disposed of, a thorough search could have taken place, or other efforts could have been expended which might have evidenced good faith on the part of defendant Orangetown and its Police Department. No such efforts were made. Indeed, nothing about the behavior of defendant Orangetown during this litigation has reflected good faith.

By this decision I do not assume any intent on the part of counsel to prevent his adversaries from having access to the evidence. Indeed, I assume, as I always do, that counsel appearing before me is doing his or her best on behalf of the client, in accord with

---

4. Rather than volunteering this information to all concerned at the moment he learned it, counsel waited to inform the parties until after Detective Sergeant Johnson's deposition had been completed, because he "expected questions to be asked of [Detective Sergeant Johnson] by you concerning, well, can we see the headlight, or where is it if you don't know where it is." (Hoffman Deposition at 63.) Counsel expressed "surprise" because opposing counsel failed to ask further follow-up questions when Detective Sergeant Johnson stated he did not know where the headlight was. (*Id.*) Such a *laissez-faire* attitude is astonishing, in light of the repeated prior admonishments of the Court respecting the necessity for the headlight to be promptly produced.

5. The "obligation [to preserve evidence runs] first to counsel, who ha[s] a duty to advise his [or her] client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 71 (S.D.N.Y. 1991), aff'd, 89 Civ. 4252(PKL), 1992 WL 51570 (S.D.N.Y. Mar. 9, 1992).

ethical responsibilities. However, by my Order of July 16, 1996, I intended to send a clear message to counsel and to defendant Orangetown of the importance of complying carefully with their obligations in this case. Throughout this case I have also made it clear that Orangetown's counsel may not simply rely on his client's statements about items subject to discovery, because the client's statements have shown themselves to be unreliable. Counsel and defendant Orangetown nevertheless have apparently chosen to disregard my warnings in this regard. This disregard further supports my conclusion that bad faith is present in the failure to safeguard the evidence; if counsel had taken the simple step of communicating with the Police Department about the need to insure the preservation of this evidence, then it would probably not have been destroyed. Counsel's failure to take this simple precautionary measure is evidence of, at a minimum, gross negligence.

The failure of defendant Orangetown to safeguard this evidence is even more egregious because the Orangetown Police Department is, or should be, in the business of insuring that evidence is handled properly. This is not a situation where an organization unaccustomed to the requirements of maintaining chain of custody and retaining important evidence has failed to preserve and protect items relevant to litigation. *See Turner v, Hudson Transit Lines, Inc.,* 142 F.R.D. at 76 (company had some document retention policy related to federal regulations but was "not sensitive to obligations arising from litigation.") Rather, the town of Orangetown, through its Police Department, is experienced, and has procedures in place, with regard to retaining and safeguarding evidence. There is no excuse for their failure in this instance.

I find it incredible that Detective Sergeant Hutmacher, an experienced police officer, disposed of property without waiting to hear from the officer who had deposited that property. (*See* Hutmacher Affidavit at p. 4, ¶¶ 14–15.) If the property had been connected with a criminal case being prosecuted by the County with the assistance of the Police Department, I am certain that it would not have been handled so cavalierly. Rather, in this case, the Police Department had no incentive to safeguard the property because they, and one of their officers, were the ones being accused of wrongdoing. Thus, as evidenced by the history of bad faith in the discovery process, I conclude that the intent of those responsible for retaining the evidence was to obfuscate and impede the process at every step. Under all these circumstances, I conclude that the failure to safeguard the evidence in question constitutes gross negligence on the part of defendant Orangetown.

*Significance of the Evidence*

It should be noted that despite defendant Orangetown's argument to the contrary, there is no real question that the headlights themselves are significant to this litigation. Not only have they been the subject of discovery requests since before the litigation began, but they have been the subject of examination by Detective Sergeant Johnson, of photographs, and of proposed expert testimony. Furthermore, defendant Orangetown's counsel's argument to the contrary is belied by his own words to his adversaries at the time he revealed the destruction of the evidence: "We'll cooperate in every way that we can and there's no willful intention here to obstruct the production of the headlight, *because the bottom line is in order for us to use the headlight or have testimony by an expert witness at the time of trial concerning it, I know that we will have to make it available."* (Hoffman Deposition at 67) (emphasis added.) The significance of the headlights is and has been clear, even to Orangetown's counsel.

Defendant Orangetown also claims that the actual headlights are not necessary in order for the experts to make a determination. Detective Sergeant Johnson has suggested that "any person retained to given [sic] an opinion concerning these headlamps should be able to do so simply based upon the numerous color photographs depicting of [sic] the bulbs and filament's condition." (Johnson Affidavit at p. 6, ¶ 22.) Plaintiff's expert, by contrast, states that "I am also able to state with a reasonable degree of engineering certainty that it is impossible for

me or any other qualified expert to reach any conclusions with a reasonable degree of certainty based upon our evaluation of photographs." (McManus Affidavit at p. 4, ¶ 9.) As set forth in more detail below, I do not credit Detective Sergeant Johnson's assessment of the evidence, and I do credit that of plaintiff's expert. More importantly, plaintiff has provided to me laser color photocopies which Detective Sergeant Johnson describes as "clearly depicting the condition of those bulbs[.]" (Johnson Affidavit at p. 5, ¶ 18.) In fact, those laser photocopies are blurry, and far from distinct. Even as a layperson, I am satisfied that such photocopies are not sufficient to permit expert analysis of the state of the headlight bulbs after the accident.

Although Detective Sergeant Johnson suggests that the photographs themselves are more clear than the photocopies, no effort has been made to produce those photographs for my review, thus I am left to reach my conclusion on the basis of the submitted photocopies. Moreover, Detective Sergeant Johnson has affirmatively adopted the photocopies as "clearly depicting the condition of those bulbs[.]" (Johnson Affidavit, p. 5 ¶ 18.) I conclude, therefore, that the photographs, or the photocopies of the photographs, are insufficient to permit expert examination in preparation for trial. The headlights themselves are the significant and irreplaceable evidence which could and should have been preserved for expert analysis prior to trial.

## ANALYSIS

### Appropriateness of Sanctions

■ It is well settled that the Court has the inherent power to sanction a party that destroys relevant and discoverable evidence. *Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19, 24 (E.D.N.Y.1996); *Turner v. Hudson Transit Lines, Inc.* 142 F.R.D. 68, 72 (S.D.N.Y. 1991), aff'd, 89 Civ. 4252(PKL), 1992 WL 51570 (S.D.N.Y. Mar.9, 1992). The Court's authority to impose sanctions derives from two sources—Federal Rule of Civil Procedure 37(b) and a court's "inherent power to regulate litigation, preserve and protect the integrity of proceedings before it, and sanction parties for abusive practices." *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D.Minn.1989) (quoted with approval in *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. at 72). The decision to impose sanctions, as well as the appropriate sanction to be fashioned, lie within the sound discretion of the trial court. *Shaffer v. RWP Group, Inc.*, 169 F.R.D. at 24.

■ In determining whether to exercise its authority to impose sanctions for spoliation of evidence, the court must initially determine whether the party had any obligation to preserve the evidence. As set forth in detail above, defendant Orangetown had an absolute obligation, imposed by its knowledge of the litigation, its knowledge of the importance of the evidence, an Order to preserve emanating from a state court and a stipulation entered into in federal court, and its obligations to comply with my discovery Orders. Having found that defendant Town of Orangetown had an affirmative obligation to preserve the headlights, and failed to do so in an egregious fashion, as a result of gross negligence and during a pattern of bad faith during the discovery process, I must determine the appropriate sanction.

The potential sanctions range from the most extreme—dismissing defendant Orangetown's answer—to the least effective—instructing them never to repeat such a practice. In the middle of these alternatives is the one which I believe is most appropriate—permitting the jury to draw an adverse inference against defendant Orangetown because of its conduct.[6]

■ An adverse inference charge serves two purposes—remediation and punishment. *Shaffer v. RWP Group, Inc.*, 169 F.R.D. at 25; *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. at 74. The remedial

---

6. The sanction recommended by defendant Orangetown, that of imposing a fine, would have no deterrent or punitive effect. A municipality can only act through its employees, and yet they are unlikely to be affected by a fine directed against the municipality. Indeed, they may not even be informed of such a fine. Thus, something more than imposition of a fine is required to properly sanction defendant for its action.

purpose of the sanction serves to place the prejudiced party in the same position with regard to its ability to prove its case as it would have been in if the evidence had not been destroyed. *Id.* The punitive purpose both deters parties from destruction of relevant evidence and directly punishes the party responsible for spoliation. " '[T]he law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidentially employed to perpetrate the wrong.' " *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. at 74 (quoting *Pomeroy v. Benton,* 77 Mo. 64, 86 (1882)). Both principles provide guidance to the Court as it considers "the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed." *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. at 74.

### Intent

I conclude, on the basis of the entire history of this litigation, the repeated failures to produce discovery in a timely fashion with only meager excuses, the failure of counsel to insure that the agreements he made to secure evidence were being complied with by his client, and especially by the belated and inappropriate provision of the information about the missing headlights, that defendant Orangetown disposed of the headlights through gross negligence. Furthermore, I conclude that the entire history supports a finding that defendant Orangetown has been handling its responsibilities in connection with this litigation in bad faith. I do not go so far as to conclude that anyone at the Police Department made a specific decision or had the specific intention [7] to destroy this evidence in order to remove it from use during this case. I specifically reject claims made by proponents that defendant Orangetown and its employees engaged in some kind of conspiracy in connection with the evidence in this case. However, my finding of bad faith throughout the discovery process, and gross negligence leading to the destruction of the property, is sufficient to merit significant deterrent action.

I conclude that the bad faith and gross negligence of defendant is sufficient basis to permit imposition of the extraordinarily harsh sanction of an adverse inference, even though I have not found that defendant town of Orangetown intentionally destroyed the property.[8] As noted by my learned col-

---

7. Some of the cases relating to the issue of spoliation of evidence seem to equate bad faith with intent to destroy. *See Shaffer v. RWP Group, Inc.,* 169 F.R.D. at 26 (the court concluded that defendants' conduct did not rise "to the level of bad faith" but "demonstrated a conscious and reckless disregard for [defendants'] discovery obligations"); *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. at 74 (where destruction is intentional, "courts clearly have the power to invoke [an adverse] inference.... While a finding of bad faith, then is sufficient to trigger an adverse inference, the courts are divided on whether it is necessary. Some say that the adverse inference may be drawn only when it has been shown that the destruction of evidence was intentional.") I have found no guidance on how to treat a situation where bad faith exists, but the destruction is the result of gross negligence, as I have found in this case. As set forth herein, I am satisfied that bad faith can exist in the absence of an intent to destroy evidence. I am further satisfied that the bad faith exhibited by defendant Orangetown throughout the discovery process is an aggravating factor which further supports my conclusion that an adverse inference instruction is an appropriate sanction for the spoliation of evidence in

this case. Whether or not the gross negligence of defendant Orangetown, standing alone, would be sufficient to support the adverse inference instruction is an issue I need not address, as the evidence of bad faith is abundant.

8. I am aware of the Second Circuit's holding in *Berkovich v. Hicks,* 922 F.2d 1018 (2d Cir.1991), in which the Court noted that "[a]bsent any evidence of bad faith, [the injured party] was not entitled to an instruction allowing the jury to draw an adverse inference from the destruction [of the evidence]." 922 F.2d at 1024. Here, I have concluded that there was bad faith. However, the Second Circuit went on to say "[o]n the facts of this case, 'one cannot justify the drawing of ... an [adverse] inference where the destruction of evidence is unintentional.' " *Id.* (quoting *INA Aviation Corp. v. United States,* 468 F.Supp. 695, 700 (E.D.N.Y.), aff'd, 610 F.2d 806 (2d Cir.1979)). Thus, there is some question whether both intent and bad faith need to be found in order to justify use of an adverse inference at trial. That case, however, turned on its unique facts. On the facts of the case before me, I conclude that the *Berkovich* holding does not

league, Magistrate Judge Francis, in his opinion in *Turner v. Hudson Transit Lines, Inc.,* the sanction of adverse inference "should be available even for the negligent destruction of [evidence] if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of the evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanics for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." 142 F.R.D. at 75.

*The Destroyed Evidence*

Defendant town of Orangetown argues that there is no evidence to support proponents' argument that the headlights may have been off at the time of the accident, and that the credible evidence could only lead a finder of fact to conclude that the lights were on at the time of the accident. Defendant argues, therefore, that an adverse inference charge cannot be given in this case, even if the destruction of the evidence was in bad faith. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. at 76 ("[C]ourts have generally required some greater showing of the content of the destroyed evidence before drawing an adverse inference.")

Defendant Orangetown relies on the testimony of Detective Sergeant Johnson for the proposition that the headlight must have been on at the time of the accident. He has provided an affidavit to this Court, in which he states, in part, "[b]ased upon my inspection of the headlamps, I formed an opinion to a reasonable degree of certainty that both lamps on Officer FITZGIBBON's vehicle were burning at the time of this accident." (Johnson Affidavit at p. 4, ¶ 14.) That affidavit echoed the deposition testimony. That

testimony is not reliable. First, I am not satisfied that Detective Sergeant Johnson's credentials as an expert are comparable to those of the expert proffered by plaintiff Donato, John McManus. Mr. McManus has informed the Court that a microscopic examination of the headlights would have been necessary in order to determinatively assess whether the lights were on or off at the time of the accident. In addition, Mr. McManus has produced an article from a Northwestern University publication entitled "Lamp Examination for ON or OFF in Traffic Accidents," by J. Stannard Baker and Thomas Lindquist, which further supports the need for microscopic examination of the damaged headlights. Detective Sergeant Johnson conducted no such microscopic examination, nor does he consider such an examination necessary (Johnson Affidavit at pp. 7–8, ¶¶ 24–29), and I conclude on this basis alone that Detective Sergeant Johnson's conclusions are not so reliable that they preclude the possibility that the lights were off at the time of the accident.

Second, Detective Sergeant Johnson has an incentive to lie, or at least to color his testimony, because of his relationship to the town of Orangetown, and his relationship to Police Officer Fitzgibbons, who is a fellow member of the force. Thus, his testimony is not that of an unrelated, objective observer. In addition, Detective Sergeant Johnson has betrayed his bias by his failure to bring the missing evidence to the attention of counsel, or even to mention it during his deposition. The testimony of Detective Sergeant Johnson in this regard is therefore subject to significant attack, and is not sufficiently credible to support defendant Orangetown's position.

By contrast, witnesses, including independent non-parties, have given conflicting statements about the state of the headlights at the time of the accident.[9] There is at least a

---

preclude the imposition of an adverse inference sanction. *See also Shaffer v. RWP Group, Inc.,* 169 F.R.D. at 28 (adverse inference instruction given where the party recklessly destroyed evidence.)

9. In fact, contained in the field notes which were only belatedly provided to proponents (*see* pages

77–78, note 3, section (1)) is the statement attributed to a witness who saw "a police car pull out of a gas station w/o headlights to chase someone." Field notes, attached to plaintiff Donato's letter brief as Exhibit B. Such a statement is clearly significant, and it was withheld by defendant Orangetown. This fact supports my finding

reasonable likelihood that the headlights were, in fact, off at the crucial time. That reasonable likelihood could have been established, one way or the other, had it not been for the gross negligence of the town of Orangetown and its officers.

In addition, since I have found that the headlights were destroyed as a result of gross negligence, and during a pattern of bad faith behavior, that in itself is some evidence for the inference that the destroyed evidence may have been detrimental to defendant Orangetown. "[A] party who has notice that [evidence] is relevant to litigation and who proceeds to destroy the [evidence] is more likely to have been threatened by the [evidence] than is a party in the same position who does not destroy the [evidence]." *Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982). I am satisfied under these circumstances that the adverse inference is commensurate with the evidence of the headlights being off at the time of the accident.

*Appropriate Sanction*

Harsh sanctions are necessary, but even the degree of bad faith and gross negligence shown here does not merit striking the answer, or directing a verdict, or directing the jury to conclude as a matter of fact that the headlights were off at the time of the accident. Rather, I hereby preclude defendant town of Orangetown from submitting any expert testimony whatsoever about the state of the headlights after the accident, and specifically I preclude Detective Sergeant Johnson from testifying about his observations of the headlights and any conclusions he drew. In addition, at trial I will inform the jury that the headlights cannot be definitively examined by experts for purposes of this trial, because even though the headlights were removed from the police vehicle for purposes of examination after the accident, the town of Orangetown Police Department failed to safeguard the headlights, and destroyed them. I will further instruct the jury that they *may* conclude, but do not have to conclude, that the destruction of the headlights was in bad faith, and that such destruction

was done because an examination *may* have concluded that the headlights were, in fact, off at the time of the accident. I will also permit the proponents to present expert testimony to the effect that an examination could have been conducted which would have led to a conclusion about whether the headlights were on or off at the time of the accident.

I will not permit evidence to be offered about the reasons for the destruction of evidence, or the circumstances surrounding such destruction. Such a mini-trial would interfere with the jury's ability to focus on the relevant facts, would be unduly confusing, and would undermine the purposes effected by an adverse inference instruction.

In addition, proponents' counsel are to submit a bill of costs to me within 5 business days of the date of entry of this written Order, identifying all time expended in connection with this issue since June 18, 1996, and all other related expenses. Such a bill of costs should include the time expended on this application and any other discovery efforts directed to the headlights. Defendant Orangetown will be sanctioned the costs associated with their grossly negligent behavior of failing to safeguard the headlights, which resulted in part from the pattern of bad faith which they have shown during the entire discovery process.

### APPLICATIONS BY PLAINTIFF FITZGIBBONS

In light of this ruling, as stated orally on March 27, 1997, counsel for plaintiff John Fitzgibbons made several oral applications, some of which I ruled on, and some of which I reserved decision on. Plaintiff Fitzgibbons' counsel correctly noted that this ruling, which is intended to sanction defendant Orangetown, impacts on plaintiff Fitzgibbons, because the issue of the state of the headlights is crucial to any factual determination of liability. On that ground he made a motion to sever *Fitzgibbons v. Donato*, 95 Civ. 4429(CLB)(LMS), which I denied. He also moved for permission to belatedly identify an expert who would be called to testify on

of bad faith, and also undercuts the credibility of

Orangetown's proffered expert.

the issue of whether the headlights themselves were necessary in order for an expert to make a determination of the state of the headlights. He asked for permission to have Police Officer Fitzgibbons explain that he had no responsibility for the retention and safeguarding of the headlights. He also sought an instruction to the jury directing that any adverse inference is only to be drawn against defendant Orangetown, and should not be drawn against plaintiff Fitzgibbons. Counsel for defendant Donato has opposed all of these applications.

██ I am concerned about the possible spillover effect of my adverse inference ruling on plaintiff Fitzgibbons,[10] who has no responsibility for the spoliation of the evidence. Notwithstanding this concern, at the time of the oral application, I believed that the only appropriate choice was to deny essentially all of plaintiff Fitzgibbons' applications for relief. I did so primarily because of my concern that severing these cases at this stage would further delay an already old case, and would require an expenditure of scarce judicial resources, as well as repetition of testimony by many of the same experts and witnesses. However, upon further consideration, I *sua sponte* grant reconsideration of the motion to sever, and upon due consideration, the motion to sever *Fitzgibbons v. Donato*, 95 Civ. 4429(CLB)(LMS), is granted.

 This Court has broad discretion to order separate trials to avoid delay or prejudice. *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir.1988); *United States v. 499.472 Acres of Land More or Less*, 701 F.2d 545 (5th Cir.1983); Fed. R.Civ.P. 42(b) (court may order separate trials "in furtherance of convenience or to avoid prejudice"); Fed.R.Civ.P. 20(b) (court "may order separate trials or make other orders to prevent delay or prejudice.") A court may order separate trials for three reasons: to

avoid prejudice, to provide for convenience, or to expedite the proceedings and economize the use of resources. Only one of these conditions is required in order to support a court's severance order. *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989), aff'd, 899 F.2d 183 (2d Cir.1990).

I conclude that in this case a joint trial, including the adverse inference instruction noted above, would prejudice plaintiff Fitzgibbons unfairly, and with no finding of fault on his part. I conclude that there is no instruction to the jury that could avoid the possibility that the adverse inference against Orangetown would "contaminate" the mind of the fact finder in its consideration of plaintiff Fitzgibbons' claims. *See Id.* Despite any instruction I might give, it is not reasonable to expect a jury to find a fact one way as to a defendant, and to find that same fact another way as to a plaintiff in a related action. Any instruction which may suggest such a possibility would be unduly confusing for the jury. Thus, plaintiff Fitzgibbons would bear the burden of the adverse inference, although he is not properly the focus of my ruling in that regard. I therefore grant the motion to sever.

I note that the need for repetitive testimony in the trial of *Fitzgibbons v. Donato* is not as great as I initially feared. For example, the medical testimony regarding plaintiff Fitzgibbons' injuries would be admissible only in the second case, and the medical testimony regarding plaintiff Donato's injuries would be admissible only in the first case. While there will be some repetition of testimony, it is not so great that it mitigates against severance.

In order to minimize any delay which will result from this severance, I further order that the trial of *Fitzgibbons v. Donato*, 95 Civ. 4429, take place at a time in the future, to be set by the Court on forty-eight hours' notice to the parties. I recognize that this

---

10. I do not have the same concern with regard to defendant Fitzgibbons. He is represented by the same counsel as defendant Orangetown, and he must therefore live with the consequences of the Court's ruling with regard to the codefendant, especially when counsel's actions are part of the reason for the ruling. Defendant Fitzgibbons is also in a position where defendant Orangetown would indemnify him for most, if not all, of any award rendered against him as a result of the jury's verdict. For these reasons, the spillover prejudice from my ruling on adverse inference is not so prejudicial to defendant Fitzgibbons that he merits any relief as a result of my ruling. Furthermore, counsel for defendant Fitzgibbons has not asked for any such relief.

imposes some prejudice on defendant Donato, who will be required to proceed to trial on short notice through no fault of hers, after already defending defendant Donato in the action brought by plaintiff DeYoung, but I conclude that this is the least prejudicial alternative to all parties.

Despite this ruling reconsidering and granting the severance, I will not permit plaintiff Fitzgibbons to belatedly identify and call an expert at trial. To permit plaintiff Fitzgibbons to identify and call an expert at trial, where plaintiff Fitzgibbons chose not to declare an expert during the process of discovery, would unfairly prejudice defendant Donato. Plaintiff Fitzgibbons chose to rely on defendant Orangetown's plan to call an expert, and he must therefore be bound by the impropriety which led to the preclusion of that very expert.

Under the circumstances of the severance there is no need to instruct the jury to draw a different factual inference as to plaintiff Fitzgibbons than as to defendant Orangetown, and that application is therefore denied as moot. I will also not permit plaintiff Fitzgibbons to testify that he had no responsibility for the collection, retention, and safeguarding of the evidence. Rather, there will be no evidence whatsoever at the *Fitzgibbons v. Donato* trial about the whereabouts of the headlights after the accident. Both parties will be bound by whatever testimony the witnesses may give about the state of the headlights at the time of the accident.

This constitutes the Decision and Order of the Court.

SO ORDERED.

