Filed 04/17/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case Nos. 22-CV-03657

| | |
|---|---|
| Anna Ardesh,<br>       Plaintiff<br><br>       v.<br><br>O'Reilly Auto Enterprises, LLC,<br>       Defendant | DECISION ON MOTIONS |

<u>RULING ON MOTIONS IN LIMINE</u>

This personal injury action arising out of a motor vehicle accident is scheduled for a jury trial beginning on April 21, 2026. Now pending before the Court are numerous motions in limine filed by the parties. The Court will address Plaintiff's motions first, and will then turn to Defendant's motions.

<u>Plaintiff's Motions in Limine</u>

I.      <u>Expert Testimony of Michael Sorensen (Mot. #13)</u>.

Defendant has retained Michael Sorensen, who is an accredited crash reconstructionist, to testify as an expert. Mr. Sorensen has not attempted to reconstruct the accident; he has taken the data that Plaintiff's expert, John Smith, relied on to reconstruct the accident, and issued a report rebutting the conclusions that Mr. Smith reached. Plaintiff moves to exclude Sorensen's opinions and conclusions that are derived from his use of Virtual Crash 6 simulation software or his reliance on an online program providing data about average driver response times, on the grounds that his reasoning and methodology are not sufficiently reliable under *Daubert*. She also seeks to preclude him from testifying about the expected reaction time of Plaintiff and whether the collision was avoidable and about the nature, extent, or cause of injury to either driver involved in the accident. Defendant responds that Sorensen has not reconstructed the accident and is only being offered as a rebuttal expert to evaluate the reliability of Plaintiff's expert, John Smith.

Under Rule 702 of the Vermont Rules of Evidence, expert testimony as to "scientific, technical, or other specialized knowledge" is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." V.R.E. 702. Trial judges act as "gatekeepers," screening expert testimony to ensure that it is reliable and helpful before a jury hears it. *State v. Pratt*, 2015 VT 89, ¶ 17, 200 Vt. 64. "The reliability of an expert's opinion depends on whether it is 'sufficiently rooted in scientific knowledge.'" *State v. Rheaume*, 2024 VT 53, ¶ 29, 325 A.3d 2 (quoting *Pratt*, 2015 VT 89, ¶ 17). To make that reliability

determination, a trial court may consider the four *Daubert* factors: "(1) whether the applicable theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; and (4) whether it has been generally accepted by the scientific community." *Id*. (citation omitted); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-94 (1993). These factors are not "exhaustive," and the Court has "broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant" in evaluating the reliability of an expert's opinion. *Rheaume*, 2024 VT 53, ¶ 29 (quoting *State v. Scott*, 2013 VT 1036, ¶ 10, 195 Vt. 330)).

Mr. Sorensen has been using the Virtual Crash software since 2017 or 2018. Courts in other states have allowed accident reconstructionists to rely on the Virtual Crash software in rendering their expert opinions in cases involving motor vehicle accidents. *See, e.g., Abbott v. Mega Trucking, LLC*, No. 2:20-CV-776-WKW, 2023 WL 2640203, at *11-13 (M.D. Ala. Mar. 25, 2023) (allowing accident reconstructionist to rely on Virtual CRASH software to create accident simulations); *Bales v. Green*, No. 16-CV-106-GKF-JFJ, 2018 WL 1470259, at *4 (N.D. Okla. Mar. 26, 2018) (finding "Defendants' challenges to the facts on which Painter relies and which were input into the crash simulation software go to the weight, not admissibility, of Painter's opinions," and stating expert's use of Virtual CRASH software is reliable); *Popovski v. Titan Transfer, Inc.*, No. 20-CV-27-SWS, 2022 WL 17095747, at *3 (D. Wyo. Jan. 28, 2022) (finding expert's use of Virtual Crash software was "sufficiently reliable to satisfy the F.R.E. 702/*Daubert* standard").

Plaintiff complains that Sorensen is not qualified to rely on the Virtual CRASH system because he does not understand how the software performs its calculations once data is put into the program. This argument has been rejected by the Vermont Supreme Court:

> Forensic investigation increasingly requires the use of computer software or other technological devices for the extraction of data. While an investigator must have specialized knowledge in the use of the particular software or device, it is not required – nor is it practical – for an investigator to have expertise in or knowledge about the underlying programming, mathematical formulas, or other innerworkings of the software.

*Pratt*, 2015 VT 89, ¶ 24; *see also id*. ¶ 30 ("[A]ny deficiencies in the program should be drawn out through the adversarial process, including vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." (quotation omitted)).

Defendant acknowledges that Sorensen's opinion also relies on average driver response times derived from the Driver Response Institute, LLC. Defendant cites cases where courts routinely allow experts to rely on average driver assumptions in rendering their opinions. Plaintiff does not argue that she falls outside the range of average drivers, and this is a subject that can be explored at trial. Thus, there is no basis to exclude Sorensen's opinion that relies on such information. Similarly, the Court finds no reason to preclude Sorensen from relying on the fact that Defendant's employee suffered no injuries from the accident, to the extent relevant to his opinion. We note that he is not expected to testify about the extent of Plaintiff's injuries.

2

Trial courts have broad discretion in deciding whether to admit or exclude evidence. *Boehm v. Willis*, 2006 VT 101, ¶ 12, 180 Vt. 615. In sum, Plaintiff's arguments go to the weight, not the admissibility, of Sorensen's opinions. *See 985 Assocs., Ltd. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 10, 183 Vt. 208 (noting that "the trial court's inquiry into expert testimony should primarily focus on excluding "junk science" – because of its potential to confuse or mislead the trier of fact – rather than serving as a preliminary inquiry into the merits of the case."). Accordingly, Plaintiff's motion to preclude Sorensen from testifying at trial is DENIED.

I.   Criminal History of Dorota Luksza (Mot. #14).

Plaintiff intends to call her sister, Dorota Luksza, to testify on her behalf, and moves to preclude Defendant from impeaching Ms. Luksza by introducing evidence relating to her criminal history or her remote history of drug use. Defendant points to court records that in December 2016, Ms. Luksza was convicted in Connecticut of second-degree larceny and first-degree failure to appear. Defendant does not address Ms. Luksza's former drug use in its opposition or contend that it intends to introduce this information.

Rule 609(a) of the Vermont Rules of Evidence provides that evidence of a witness's criminal conviction may be used to impeach a witness's credibility if the crime (1) involved untruthfulness or falsification or (2) was punishable by imprisonment in excess of one year under the law of another jurisdiction where the witness was convicted, and no more than fifteen years have elapsed since the date of the conviction(s). V.R.E. 609(a), (b). While neither party argues that untruthfulness or falsification is a statutory element of the convicted crimes, they are both classified as felonies in Connecticut and are punishable by more than one year in prison. Ms. Luksza was sentenced to four years in jail for the larceny conviction and one year for the failure to appear conviction, both suspended.

The Court concludes that Defendant may impeach Ms. Luksza using the larceny conviction. It is generally understood that larceny implicates dishonest conduct. *See State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985) (holding trial court erred when it excluded evidence of witness's conviction for attempting to receive stolen property "*solely* because such evidence might have a chilling effect on the complaining witness's testimony"). Therefore, it is relevant and has some probative value. Moreover, as Defendant notes, Plaintiff fails to identify any undue prejudice that would result from such impeachment using the larceny conviction. V.R.E. 609(a)(2) (court may allow impeachment by evidence of felony conviction if probative value substantially outweighs danger of unfair prejudice); *see also* Wright & Miller, 28 *Fed. Prac. & Proc. Evid.* § 6134 (2d ed.) (noting that evidence "is unfairly prejudicial to the extent it may induce the jury to decide the case on an improper basis," but a jury may use "conviction evidence . . . for the proper purpose of drawing an inference about the witness's credibility" (footnotes omitted)). However, the Court does not find that failing to appear in court sufficiently implicates dishonesty to be a relevant consideration for the jury. Therefore, it has no probative value that would "substantially outweigh[] its prejudicial effect." V.R.E. 609(a)(2). Accordingly, Plaintiff's motion to exclude evidence of Ms. Luksza's criminal convictions is DENIED as to larceny and GRANTED as to failure to appear. The motion is MOOT as to evidence of any prior drug use by Ms. Luksza, as Defendant has not responded that it intends to offer such evidence.

### III.  Judicial Notice of Mortality Tables (Mot. #15).

Plaintiff moves the Court to take judicial notice of government-issued mortality tables pursuant Rules 201, 902, and 1005.  Defendant opposes the motion on the basis of relevance, contending that Plaintiff provides no foundational evidence demonstrating that life expectancy tables are relevant to the issues for trial: "Unless Plaintiff successfully admits evidence that Plaintiff's alleged injuries are permanent, life expectancy tables are irrelevant."  Opp. to Mot. at 2.

The Court may take judicial notice of adjudicative facts "at any stage of the proceeding." V.R.E. 201(f).  While the Court notes that parties routinely stipulate to the admission of such life-expectancy tables, the Court will DEFER ruling on this motion until trial.  Plaintiff may move for the Court to take judicial notice of the mortality tables at an appropriate time during the trial and Defendant may consider whether to renew its objection.

## Defendant's Motions in Limine

### I.  Expert Testimony of John Smith (Mot. #16).

Plaintiff has retained John Smith, who is a biomechanical engineer and accident reconstruction expert.  He prepared a report reconstructing the accident based on information he gleaned from the Crash Report of the accident, a report from the DMV, repair estimates for both vehicles involved in the accident, photographs of the vehicles after the accident, discovery responses, deposition transcripts, and Plaintiff's medical records.  Defendant challenges the data and methods Mr. Smith used in reconstructing of the accident under Rule 702 and *Daubert*, asserting that Smith relied on intuition rather than scientific research.  Plaintiff explains that Smith included two different opinions in his report: a crash reconstruction addressing liability and a biomechanical analysis of the impact of the forces of the crash on Plaintiff's body. Because Defendant concedes liability, Plaintiff states that only the biomechanical analysis is relevant.

Defendant does not challenge Smith's credentials or status as an expert in accident reconstruction or biomechanical engineering.  It merely challenges the way Smith went about obtaining the data he used in reconstructing the accident and engaging in the biomechanical analysis.  As was the case in addressing Plaintiff's motion to exclude Defendant's expert, Defendant's criticisms go to the weight, not the admissibility of Smith's report and opinions. Defendant's counsel will have the opportunity to challenge the basis of Smith's report and opinion on cross-examination, and it will be up to the jury to determine Smith's credibility and determine what weight to give his testimony or report.  *See Pratt*, 2015 VT 89, ¶ 30 ("So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it." (quotation omitted)).  Accordingly, Defendant's motion to preclude Smith from testifying at trial is DENIED.

II.     <u>Craig Lichtblau's Causation Opinion (Mot. #16)</u>.

Plaintiff has retained Craig Lichtblau as a medical expert to opine on the causation of Plaintiff's injuries. Defendant asserts a *Daubert* challenge to his testimony, not because Dr. Lichtblau lacks proper credentials, but because it contends Lichtblau relied too heavily on Plaintiff's self-reported medical history and did not review enough of Plaintiff's medical records. Lichtblau's report includes a comprehensive examination of Plaintiff and documents the information he relied on in reaching his opinions. Thus, there is no basis to exclude his opinion under Rule 702 or *Daubert*. As the Court has previously noted, Defendant will have the opportunity to cross-examine Dr. Lichtblau about the records he reviewed (or didn't review) and the basis for his opinions. It will be up to the jury to determine how much weight to give to Dr. Lichtblau's opinions. Therefore, Defendant's motion to exclude Dr. Lichtblau's testimony as to causation is DENIED.

III.     <u>Plaintiff's Past and Future Medical Expenses (Mot. #16)</u>.

Defendant objects to Plaintiff's introduction into evidence of reports by Dr. Lichtblau or the economist Arthur Wolf as the basis of her future medical expenses. Plaintiff represents that she does not intend to rely on either Dr. Lichtblau's cost projections or the analysis prepared by Mr. Wolf. Thus, Defendant's motion on this issue is MOOT.

Defendant also objects to Plaintiff's introduction into evidence of any past billing invoices or the amounts she has spent on medical treatments because Plaintiff did not disclose her medical billing records to Defendant until March 12, 2026, despite Defendant's discovery requests issued in December 2022 seeking this information. Plaintiff has agreed to exclude any reference to her billing invoices and the amounts of her medical treatments at trial. Likewise, then, Defendant's motion on this topic is also MOOT.

IV.     <u>Witnesses Disclosed after Close of Discovery (Mot. #16)</u>.

Discovery in this case closed in July 2025. Plaintiff supplemented her discovery responses in March 2026, and in response to Defendant's interrogatory asking for "the names and addresses of all persons known to you or your attorney who have knowledge of any facts relating to your alleged injuries and claims for damages," Plaintiff added four names to those she identified in her original response: Mateusz Luksza, Hope Dorsey, Amir Ardesh, and Noah Morwood. Plaintiff had identified her son Mateusz in response to an earlier interrogatory asking for names of anyone with "knowledge of any facts relating to the alleged incident, and facts relating to the claims and defenses in this lawsuit." The other three individuals were identified for the first time in March 2026.

Because Plaintiff identified her son Mateusz as someone with knowledge of the facts surrounding the accident, Defendant could have deposed him and determined the extent of his knowledge. The same cannot be said of the other three individuals, and Plaintiff has failed to adequately explain why they were not disclosed with the discovery deadline. Accordingly, the motion to excluded witnesses is GRANTED as to Hope Dorsey, Amir Ardesh, or Noah Morwood, but DENIED as to Mateusz Luksza. *See White Current Corp. v. Vt. Elec. Co-op, Inc.*,

158 Vt. 216, 222-23, 609 A.2d 222, 225-26 (1992) (finding court did not abuse its discretion by precluding witnesses from testifying at trial due to party's late disclosure).

> V.      Spoliation of Evidence (Mot. #16).

> A. Plaintiff's Vehicle

Defendant complains about "spoliation of evidence" by Plaintiff and two of her experts. First, Defendant focuses on the car Plaintiff was driving when the accident occurred. Plaintiff allowed that car to be sold in March 2022. Defendant asserts that Plaintiff's failure to preserve her vehicle for inspection deprived it of the opportunity to develop its evidence on liability and causation and led to Mr. Smith's speculation as to how the accident occurred. Defendant asks the Court to preclude Plaintiff from offering evidence and argument based on the post-accident condition of her car because she failed to preserve it as evidence.

Plaintiff responds that the insurance companies arranged for the car's disposal and she was not aware of any duty to maintain it as evidence. Defendant does not contend that Plaintiff acted in bad faith or with any ill intent, nor that she knew the car would be needed as evidence in litigation. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."). The Court notes that the Complaint in this case was not filed until October 2022, many months after the car was sent overseas. Further, it is clear that both Plaintiff and Defendant are at a disadvantage in reconstructing the accident without being able to inspect Plaintiff's car.

This case is distinguishable from the cases Defendant cites where an instrumentality was allegedly faulty or defective and this fault or defect was alleged to be the cause of a plaintiff's damages. *See, e.g.*, *Silvestri*, 271 F.3d at 586-87, 593-95 (affirming trial court's decision to dismiss case involving defective air bag where defendant had no opportunity to inspect vehicle before it was sold); *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 92, 95-96 (1st Cir. 1999) (affirming trial court's decision to limit plaintiffs' reliance on seat belts' post-accident condition at trial where seat belts were alleged to be faulty and vehicle was destroyed before defendant had opportunity to inspect vehicle's seat belts); *Donato v. Fitzgibbons*, 172 F.R.D. 75, 82-84 (S.D.N.Y. 1997) (sanctioning defendant for destroying headlights of vehicle when issue in case was proper functioning of headlights). Unlike those cases, Plaintiff alleges that Defendant's employee crashed into her and that the crash is what caused her injuries and other damages. No one has alleged that any defect with Plaintiff's car led to the accident.

There is no doubt that the parties would have benefited from the preservation of Plaintiff's car, at least to the extent of determining causation. However, because Defendant concedes liability, the only issue left is to determine whether and to what extent Plaintiff experienced damages caused by the accident. Both parties are equally at a disadvantage and can cross-examine the assumptions of the opposing side's experts with regard to how the accident occurred, if they wish. Thus, the Court concludes the spoliation doctrine is simply inapplicable here, and declines to impose any sanctions. Accordingly, Defendant's motion on such grounds is DENIED.

B. Craig Lichtblau's Recorded Interview with Plaintiff

Dr. Lichtblau testified that he recorded his interview with Plaintiff when she came in for a medical examination and that the recording was destroyed in the regular course of his business once the audio recording was transcribed. Defendant complains that the destruction of this recording deprives it of "critical material on which Dr. Lichtblau relied and which is discoverable expert material." Defendant asks the Court to prohibit Dr. Lichtblau from testifying to the extent his testimony is based on his interview with Plaintiff.

Again, Defendant does not point to any evidence suggesting that the destruction of the audio recording was done in bad faith or to place Defendant at a disadvantage. Nor does Defendant provide any support for its assertion that Dr. Lichtblau had an obligation to preserve the recording. Defendant's motion to limit Dr. Lichtblau's testimony is DENIED.

C. John Smith's Failure to Preserve Path on Google Earth

Plaintiff's expert, Mr. Smith, testified that he used a measurement tool on Google Earth to project the path of the vehicles involved in the accident and determine the angle of collision. Defendant complains that Mr. Smith did not preserve and produce a copy of this projection in discovery and asserts that "Smith's decision to destroy this critical analysis leaves O'Reilly without the crucial evidence needed to impeach his testimony." Defendant asks the Court to preclude Mr. Smith from testifying to the extent his opinions are based on the projection he made using Google Earth.

During his deposition, Mr. Smith explained how he used the plotting tool on Google Earth, and Defendant can question him about this at trial. The Court concludes that Defendant has failed to demonstrate any prejudice based on the alleged "lack of access" to the tool's projections. The motion is DENIED.

VI.     Evidence Proving Liability (Mot. #16).

Defendant asks the Court to preclude Plaintiff from introducing any evidence of Defendant's liability for the accident because Defendant has conceded the issue of liability. Plaintiff agrees that evidence of Defendant's actions and inactions concerning its hiring of drivers, screening, training, and supervision practices are no longer relevant. Plaintiff also agrees that evidence of Defendant's employee's driving history, prior DUI, and performance at O'Reilly are not relevant to the issues to be tried. Accordingly, the Court does not expect such evidence to be offered.

However, the Court agrees with Plaintiff that some circumstances of the collision are relevant and may be introduced. Such context will likely be helpful to the jury, including Plaintiff's testimony concerning how the accident occurred, what she perceived and experienced during the accident, and how it affected her. There is no basis to exclude such evidence, and therefore, Defendant's motion, to the extent it is not MOOT, is DENIED.

7

VII. "Reptile Theory" Comments, Etc. (Mot. #16).

Defendant's final requests concern the lawyers' anticipated conduct at trial. Such a motion merely seeks to have counsel comply with the Court's expectations that they will conduct themselves with the utmost civility and professionalism, and therefore should be entirely unnecessary. Without focusing on counsel's alleged conduct while taking depositions, the parties should understand that, when addressing the jurors, the Court expects counsel on both sides to focus on the evidence that is expected to be introduced (in opening statements) or that has been introduced (in closing statements) and to avoid any negative comments about the plaintiffs' bar or the defense bar. Similarly, no reference shall be made to insurance policies or whether Plaintiff's claims are covered by any liability insurance. *See* V.R.E. 411 (evidence of liability insurance not admissible to prove negligence or fault). In short, the Court expects all attorneys and witnesses to show respect to the Court and all opposing counsel and parties, and that counsel will follow the rules of evidence, rules of civil procedure, and rules of professional responsibility in trying this case.

VIII. Defendant's Motion to Exclude "Late-Disclosed" Photographs (Mot. #18).

Defendant moves the Court to exclude photographs produced by Plaintiff during the parties' recent meeting regarding proposed exhibits that were not produced in response to Defendant's discovery requests. Plaintiff represents the photos depict her at various times in her life. Defendant argues the photos should have been produced in response to requests for "documents" showing or relating to her damages claims.

Defendant has failed to demonstrate that the pictures were clearly requested in discovery, such that the failure to produce them warrants the sanction of exclusion. Defendant admits it did not include a definition of "documents" in its document requests. Thus, it was not unreasonable for Plaintiff to apply the definition contained in the Interrogatories, which could have mentioned "photographs" as among the examples included, but did not. Moreover, where Defendant sought photographs in other requests, it expressly requested them. Rule 34's definition of "documents or electronically stored information" is not controlling, since Defendant apparently did not incorporate that definition into its requests, and in any event, the rule defines information that parties may request, but does not say what is designated by a party. *See* V.R.C.P. 34(a). Nor does the Court find sufficient unfair prejudice to Defendant to support excluding the photographs, which presumably will be used as illustrations of matters to which Plaintiff will testify anyway. Defendant's motion is DENIED.

Order

For the foregoing reasons, the parties' motions in limine are determined as follows:

• Plaintiff's Motion to Exclude Expert Testimony of Michael Sorensen (Mot. #13) is DENIED.

• Plaintiff's Motion to Exclude Criminal History of Witness Dorota Luksza (Mot. #14) is DENIED as to the larceny conviction and GRANTED as to the failure to appear.

8

• Plaintiff's Motion for Judicial Notice of Life-Expectancy Tables (Mot. # 15) is DEFERRED until trial.

• Defendant's Motion in Limine (Mot. #16) is GRANTED in part and DENIED in part as set forth above.

• Defendant's Motion to Exclude Late-Disclosed Photographs (Mot. #18) is DENIED.

Electronically signed on April 17, 2026 at 4:14 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge