RENDA MARINE, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–306 C.

United States Court of Federal Claims.

Aug. 29, 2003.

Brian Erickson, Dallas, TX, for plaintiff.

John E. Kosloske, with whom were Peter D. Keisler, Assistant Director, and David M. Cohen, Director, Civil Division, Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

HEWITT, Judge.

Plaintiff, Renda Marine, Inc., (plaintiff or Renda) is a marine dredging contractor. Complaint (Compl.) ¶ 1. Plaintiff has filed suit against the United States, acting through the Army Corps of Engineers, Galveston, Texas District (defendant or Corps), alleging that it encountered differing·. site conditions during the course of its contract performance of the "Upper Bayou Project." *Id.* at 1–3. The "Upper Bayou Project" contract involved the partial dredging of the Galveston–Houston Ship Channel and the construction of levees at the Lost Lake Containment Area for the dredged material. Defendant's Motion to Compel (Def.'s Compel Mot.) at 2. This action involves claims that are subject to the Contract Disputes Act, 41 U.S.C. §§ 601–613. This case is in discovery. Several disputes have arisen about the parties' responsibilities to preserve evidence and to produce evidence.

Before the court are: (1) Motion by Renda Marine, Inc. To Compel Access to Hard Drives and Email System, Combined with Brief in Support (Pl.'s Hard Drive Mot.), and (2) Defendant's Motion to Compel (Def.'s Compel Mot.) together with the responsive briefing to the respective motions.[1] To assist the court in resolving the parties' discovery disputes, the court conducted a telephonic status conference with the parties and, by Order dated July 7, 2003, directed the parties to file supplemental briefing addressing: (1) when the duty to preserve evidence and/or documents attaches; and (2) whether a party can be compelled under RCFC 34 to organize documents to correspond with the categories in a document production request. Further to the court's July 7, 2003 Order, the parties filed Renda Marine, Inc.'s Brief Pursuant to Order in Furtherance of Telephonic Status Conference (Pl.'s Supp. Br.), Defendant's Supplemental Brief in Response to Court's July 7, 2003 Order (Def.'s Supp. Br.), and Renda Marine, Inc.'s Reply to Defendant's Supplemental Brief in Response to Court's July 7, 2003 Order (Pl.'s Supp. Reply). Further to a specific request of the court contained in the July 24, 2003 Order, defendant filed a copy of its basic policy on records management.

Upon review of the submitted materials and for the following reasons, plaintiff's motion is GRANTED. Defendant's motion is GRANTED to the extent stated in the conclusion.

### I. Plaintiff's Motion

Plaintiff moves the court to compel defendant to respond to Request Nos. 16–20 of Plaintiff's First Request for Production of Documents seeking e-mail and related documents.[2] Pl.'s Hard Drive Mot. at 1–2. Plaintiff asserts that, based on defendant's own admission, defendant did not search any hard drives or back-up tapes in preparing its response to plaintiff's document production requests. The requests specifically ask for back-up tapes. *Id.* at 2; Exhibit A to Motion by Renda Marine, Inc. to Compel Access to Hard Drives and Email System, Combined

---

1. The responsive briefs are: (1) Response by Renda Marine, Inc. to Defendant's Motion to Compel (Pl.'s Resp.); (2) Defendant's Reply to Plaintiff's Response to Defendant's Motion to Compel (Def.'s Reply); (3) Defendant's Opposition to Plaintiff's Motion to Compel (Def.'s Opp.); and (4) Renda Marine, Inc.'s Reply to Defendant's Response to Compel Access to Hard Drives and Email System, Combined with Brief in Support (Pl.'s Reply).

2. These requests are:

> Request No. 16: Any emails or internal communications concerning Renda of the Upper Bayou Project.
> Request No. 17: Any back-up tapes containing emails or internal communications concerning

Renda or the Upper Bayou Project to or from Thomas Benero.
> Request No. 18: Any back-up tapes containing emails or internal communications concerning Renda or the Upper Bayou Project to or from John Rozspal.
> Request No. 19: Any back-up tapes containing emails or internal communications concerning Renda or the Upper Bayou Project to or from Luis Saenz.
> Request No. 20: Any back-up tapes containing emails or internal communications concerning Renda or the Upper Bayou Project to or from Michael McLennan(sic).

Exhibit B to Motion by Renda Marine, Inc. to Compel Access to Hard Drives and Email System, Combined with Brief in Support (Pl.'s Hard Drive Mot. Ex. B) at 6–7.

with Brief in Support (Pl.'s Hard Drive Mot. Ex. A) at 9–10.

Plaintiff requests that, in response to Request No. 17,[3] defendant provide access to the hard drive of Thomas Benero, the contracting officer in this case, based on Mr. Benero's admission that it is his practice to "'delete emails after sending or responding to them.'" Pl.'s Hard Drive Mot. at 1–2. Plaintiff challenges defendant's objection that Request No. 17 is "overly broad." *Id.* at 2. Plaintiff contends that its "request is narrowly tailored to cover communications specific to the project at issue in this suit." *Id.* at 3. Plaintiff explains that "Renda's technicians can retrieve deleted email and search hard drives and document and email back-up tapes ...limit[ing] their retrievals to document and email relevant to this project and Renda." *Id.* at 2. Plaintiff adds that because Mr. Benero "fail[ed] to preserve evidence for ... use in pending ... litigation" and "continued to delete email messages after this suit was filed," *id.* at 3 (citing *Trigon Insurance Co. v. United States,* 204 F.R.D. 277, 284 (E.D.Va. 2001)), defendant must, at its expense, be compelled "to produce computer back-up tapes and allow Renda access to the e[-]mail server to retrieve Mr. Benero's responsive email (sic) communication." *Id.* at 4. Plaintiff also moves the court to compel defendant to respond to Request Nos. 16 and 18–20 of Plaintiff's First Request for Production of Documents by producing "any back-up tapes containing emails or internal communications concerning Renda or the Upper Bayou Project to or from John Roz[s]ypal, Luis Saenz, [and] Michael McLe[n]an." *Id.;* Pl.'s Hard Drive Mot. Ex. A at 9–10.

Defendant contends that it has responded to Request No. 16 which "is not a request for back-up tapes" but a request for "'any emails' concerning Renda or the Upper Bayou Project.[']" Def.'s Opp. at 15. Defendant states that, on February 14, 2003, it produced 1,132 pages of e-mail messages to plaintiff. *Id.* Defendant adds that it "subsequently provided Renda with a privileged documents log and copies of additional e-mail messages relating to the Upper Bayou Project from which privileged information was redacted." *Id.*

Defendant asserts that, when it learned that the e-mail documents produced by defendant were printed out from the personal desktop computers of Messrs. Rozsypal, Saenz, and McClenan and "were not generated from computer back-up tapes maintained by the Galveston District [Army Corps of Engineers]," defendant asked the Corps to perform, on an expedited basis, "'a search of the back-up tapes for documents responsive to production requests 17–20.'" *Id.* at 7. Defendant informed plaintiff, by letter dated April 8, 2003, that it would produce promptly to plaintiff paper copies of those retrieved e-mails that were not exempt from discovery once the documents were received. *Id.* Defendant states that it supplemented its response to Request Nos. 17–20 "by producing relevant e-mail messages recovered from [the] tapes on May 30, 2003." *Id.* at 8. Defendant notes that "[t]he back-up tapes contained only 85 pages of relevant material (Bates Nos. RM–COE–23251 through RM–COE–23336), most of which already has been produced by the Government for Renda." *Id.* at 16 n. 10. Because defendant has responded to the production requests by producing copies of relevant e-mail messages retrieved from back-up tapes, defendant urges the court to deny plaintiff's motion.

Plaintiff argues that "[a]s a matter of law, Mr. Benero['s] routine deletion of email constitutes spoliation of evidence." Pl.'s Hard Drive Mot. at 3. Plaintiff contends that "[d]efendant's admission that [the contracting officer] routinely deleted email even after this lawsuit commenced does not excuse defendant's failure to produce the requested documents" but rather requires that plaintiff be given access to defendant's back-up tapes and computer hard drives. *Id.* Plaintiff moves the court to sanction defendant for "such spoliation of evidence," *id.,* by requiring defendant "to pay all costs associated with retrieving the responsive documents." *Id.* at 3–4.

---

3. Request No. 17 seeks "[a]ny back-up tapes containing emails or internal communications concerning Renda or the Upper Bayou Project to or from Thomas Benero." Pl.'s Hard Drive Mot. at 2.

Defendant argues that, notwithstanding Mr. Benero's routine deletion of his email, the spoilation doctrine does not apply in this case. Def.'s Opp. at 9. Noting that the "spoliation doctrine" may give rise to an inference that a party destroyed evidence because it would have been damaging in litigation, defendant observes that such an inference may be drawn only " 'where it can be shown that the destroyed evidence was critical or controlling on an issue of liability and the evidence was destroyed in bad faith.' " *Id.* (quoting *Hardwick Bros. Co., II v. United States,* 36 Fed.Cl. 347, 416 (1996), *aff'd on other grounds,* 168 F.3d 1322 (Fed.Cir.1998), *cert. denied,* 526 U.S. 1111, 119 S.Ct. 1754, 143 L.Ed.2d 787 (1999)). Here, defendant asserts, plaintiff has failed to show: (1) that Mr. Benero's e-mail deletion practice resulted in the destruction or loss of any e-mail messages, (2) that the deleted e-mail messages were critical to an issue of liability in the case; and (3) that Mr. Benero deleted the messages in bad faith. *Id.* at 9–13. Defendant contends that it has produced the responsive documents, supplementing those documents printed out from the "personal (desktop) computers of Messrs. Rozsypal, Saenz, and McLenan" with copies of the email messages recovered from the back-up tapes and "restored to the accounts of Messrs, Benero, Rozsypal, Saenz, and McLenan." *Id.* at 16. Moreover, defendant explains, that granting plaintiff access to the hard drive for Mr. Benero's computer would be "pointless," *id.* at 14, because "the deleted e-mail messages were not saved to, and thus would not appear on, the hard drive for Mr. Benero's computer." *Id.* at 13.

Plaintiff contends that it should be permitted "access to not only Mr. Benero's hard drive, but also to the email server and computer back-up tapes," Pl.'s Reply at 4, to prevent defendant from benefitting from its "blanket destruction of relevant email," *id.* at 2, and "to ensure that all relevant documents are produced." *Id.* at 3. Plaintiff argues that defendant should pay for the retrieval and proposes that defendant first review the retrieved e-mail documents and raise appropriate objections before Renda reviews the documents. *Id.* at 3. Alterna-

tively, plaintiff offers to pay for the document retrieval. *Id.*

As a threshold issue in deciding this matter, the court examines the duty to preserve evidence imposed by law on defendant and when that duty first attached. The parties argue in their supplemental briefing that the duty to preserve evidence arises when a party knows or reasonably should know that such evidence may be relevant to pending or even to future litigation. *See* Pl.'s Supp. Br. at 1–2 (citing *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556–57 (N.D.Cal.1987) (duty to preserve evidence which litigant knows or reasonably should know is relevant either to a pending or a contemplated action)); Def.'s Supp. Br. at 2 (quoting *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir.2001) (" 'The obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.' ")). Defendant contends, however, that "[i]n a CDA case . . . it would appear that this obligation arises when the contracting officer receives a claim. . . . [because] at that point, the contracting officer is on notice of a matter that could lead to litigation." Def.'s Supp. Br. at 2.

 As the parties have pointed out in their briefing, the case law imposes a "duty to preserve material evidence . . . not only during litigation but also . . . [during] that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 591 (4th Cir.2001). A party's obligation to preserve evidence that may be relevant to litigation is triggered once the party has notice that litigation may occur. *See, e.g., Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998) (An "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litiga-

tion."); *Century ML–Cable Corp. v. Carrillo,* 43 F.Supp.2d 176, 181 n. 8 (D.P.R.1998) (obligation to preserve evidence arises even prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced); *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y.1991) (same); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D.Cal.1984) (same).

Notwithstanding defendant's acknowledgment in its briefing of the duty to preserve evidence, defendant's own policy on records management, detailed in the Declaration of Judie L. Lester (Lester Decl.), appears to the court to be inconsistent with its legal obligation to preserve evidence. Ms. Lester, as a Records Management Program Manager for the Corps, is "responsible for ensuring the proper marking, storage, retention, and disposition of records within the Galveston District" of the Corps. Lester Decl. ¶ 2. In her declaration, she states that, in accordance with the governing policies and procedures set forth in the pertinent Army Regulations, the local district policy statement on the retention of e-mail is set forth in a Galveston District Office Memorandum dated November 15, 2000. *Id.* ¶ 14. That memorandum provides that after e-mail has been read, it should be deleted or move to a personal folder as soon as possible. *Id.* The court does not believe that a records retention policy which is inconsistent with a party's obligations to a potential or actual adversary in litigation operates to excuse the party's failure to respond to discovery.[4]

The court is persuaded that defendant had a legal obligation to preserve evidence related to plaintiff's claim for differing site conditions upon notice that litigation might occur. The court now considers when defendant may have been put on notice of the likelihood of litigation. Plaintiff asserts that on October 9, 1999, it "first orally notified Defendant of differing site conditions" and thereby put defendant on notice of a potential claim. Pl.'s Supp. Br. at 2. *See* Compl. ¶ 21. Plaintiff further asserts that "on March 8, 2000, during a heated dispute regarding the differing site conditions, Defendant threatened to terminate Renda for default delays Renda faced in its efforts to complete the Upper Bayou Project." Pl.'s Supp. Br. at 2. *See* Compl. ¶ 22. Plaintiff contends that such communications between itself and Mr. Benero, the contracting officer, were sufficient to alert defendant that a potential claim and to trigger the duty to preserve evidence.[5] Pl.'s Supp. Br. at 2.

In its Answer to plaintiff's complaint, defendant denies Renda's allegations that on or about October 9, 1999, plaintiff orally notified defendant of differing site conditions at the South Ferry Landing "for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted." Answer ¶ 21. Defendant does admit, however, that about that time, plaintiff moved a dredge known as the Millennium to a different location. *Id.* Defendant also admits that on or about March 8, 2000, the contracting officer issued a cure notice to plaintiff. *Id.* ¶ 22. Moreover, defendant admits "to the extent supported by the 'Certified Claim' cited" that plaintiff sought payment for extra costs in-

---

4. The existence of the policy could bear on the question of the subjective good faith of persons operating under the policy and in compliance with it, a matter this court does not need to address in connection with pending motions. To draw an adverse inference based on the alleged spoliation of documents, the court requires a showing of subjective bad faith. *See Columbia First Bank v. United States,* 54 Fed.Cl. 693, 704 (2002) (holding that, in the absence of a showing of plaintiff's bad faith, defendant not entitled to summary judgment on its claim of spoliation); *Slattery v. United States,* 46 Fed.Cl. 402, 405 (2000) (finding that bad faith was an essential element of spoliation); *Hardwick Bros. Co. II v. United States,* 36 Fed.Cl. 347, 417 (1996) (stating that "courts will not draw [a] negative inference

if the evidence was unintentionally or even negligently destroyed or the destruction can be satisfactorily explained").

5. Plaintiff has alleged in its complaint that on or about January 10, 2001, it submitted a certified claim to the contracting officer seeking a final decision regarding the extra costs Renda incurred due to differing site conditions. Compl. ¶ 38. Plaintiff further alleged that as of the filing date of its complaint, April 11, 2002, no final decision has issued. *Id.* ¶ 48. In its answer, defendant admitted that "as of April 11, 2002, the Contracting Officer had not issued a decision upon the 'South Ferry Landing Differing Site Conditions Claim.'" Answer ¶ 48.

curred, an extension of time within to perform its contract, and a final decision from the contracting officer. *Id.* ¶ 38.

■ Plaintiff's purported oral communication in October 1999 with defendant concerning the alleged differing site condition, if proven to have occurred, could be construed as notice to defendant that a potential litigation claim existed. There is no dispute, however, that defendant in fact issues a cure notice on March 8, 2000. It is the view of the court that defendant reasonably should have known of a potential litigation claim in March 2000 when it issued a cure notice to Renda concerning plaintiff's contract performance at the South Ferry Landing location of the alleged differing site condition. Accordingly, in view of Mr. Benero's practice of deleting relevant e-mail documents which continued even after the filing of this action, the court directs the defendant to produce at its expense those back-up tapes that were created on and after March 8, 2000 and to provide plaintiff with access to Mr. Benero's hard drive in accordance with the terms of the Protective Order Regarding Electronic Discovery filed with the court on July 29, 2003. Defendant shall also produce to plaintiff those back-up tapes that pre-date March 8, 2000 at plaintiff's expense and in accordance with the terms of the Protective Order Regarding Electronic Discovery filed with the court on July 29, 2003.

## II. Defendant's Motion

Defendant moves the court to compel plaintiff: (1) to produce documents responsive to Request Nos. 1–5 and 43 of Defendant's First Request for Production of Documents,[6] Def.'s Compel Mot. at 1, 6; (2) to provide the information mandated by Rule 26(b)(5) of the Court of Federal Claims (RCFC), namely, a privilege log, in connection with plaintiff's objection to Request Nos.

6, 12, 15, 16, 40, and 41 of Defendant's First Request for Production of Documents, Def.'s Compel Mot. at 11; and (3) to respond to Interrogatory No. 1 of Defendant's First Set of Interrogatories and Request for Production of Documents and the related document production requests, specifically Request Nos. 1–3 of Defendant's Second Request for Production of Documents. *Id.* at 7.

With respect to Request Nos. 1–5 and 43 of Defendant's First Request for Production of Documents, defendant states that, after plaintiff's initial production of 20 boxes of documents and a subsequent exchange of correspondence between counsel, plaintiff indicated, by letter dated January 23, 2003 responding to defendant's letter of even date, that it would " 'attempt to locate and produce the documents' " responsive to defendant's production requests. Def.'s Compel Mot. at 6; Appendix to Defendant's Motion to Compel (Def.'s App.) 62. Defendant asserts that, to date, plaintiff has "not produced any documents responsive to Document Requests 1 through 5 and 43 or advised the Government that it does not possess any such materials." Def.'s Compel Mot. at 6.

Plaintiff responds that it "has produced more than 23 boxes of documents." Pl.'s Resp. at 1. Explaining that it "has moved three times since the [Upper Bayou] Project began [and that] [m]ost of [the] employees who started the Project are no longer with the company," Pl.'s Resp. at 2, Renda notes that "[i]t is possible that some documents disappeared" with the former employees. *Id.* Plaintiff states that, consistent with the discovery rules, it will supplement its production of documents should additional documents that are responsive to defendant's requests be located. *Id.* at 3.

■ Having inspected the documents initially produced by plaintiff and reviewed plaintiff's amended responses to the docu-

6. Document Request Nos. 1 through 4 seek documents relating to: (1) the preparation of plaintiff's bid for the Upper Bayou Project; (2) any pre-bid site investigation performed by Renda; (3) the results of any pre-bid surveys performed by plaintiff; and (4) any pre-bid meetings relative to the Upper Bayou Project. Def.'s Reply at 2. Document Request No. 5 seeks documents prepared by Renda "that 'discuss, interpret, evaluate, analyze, or otherwise comment upon any provision(s) or aspect(s) of the Contract Plan and specifications,' including pre-bid evaluations or analyses prepared by geotechnical consultants or soils engineers." *Id.* Document Request No. 43 seeks production of "[a]ny and all job cost reports, analyses, or other documents relating to periodic monitoring of costs incurred by Renda to perform the Contract." *Id.* at 4.

ment requests,[7] defendant states that it is left "in the same quand[a]ry as before [because it] cannot tell whether Renda's position is that it does not have any documents responsive to these discovery requests or that it has produced responsive documents." Def.'s Reply at 4. Defendant requests that plaintiff clarify its responses to Document Request Nos. 1–5 by stating, with respect to each of the requests, either that it does not have any responsive documents or that it identify by Bates number the documents defendant has produced in response. Def.'s Resp. at 4.

At the core of the parties' disagreement here is their conflicting interpretation of RCFC 34. Rule 34 provides, in pertinent part, that:

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

RCFC 34(b).

Plaintiff argues that RCFC 34(b) affords the producing party the option of producing documents as they are kept in the normal course of business or alternatively, organizing and labeling them to correspond to the particular requests. Pl.'s Supp. Br. at 3; Pl.'s Supp. Reply at 3. Plaintiff contends that compelling it to label the produced documents to correspond with defendant's particular discovery requests or to provide an index of all produced documents is inconsistent with the election plaintiff may make under RCFC 34(b), imposes an undue burden on plaintiff to organize more than 38,000 pages of records, and is a courtesy not similarly reciprocated by defendant. Pl.'s Supp. Reply at 2–3.

Defendant contends that plaintiff does not have an absolute option to produce its records as they are kept in the ordinary course of business. Def.'s Supp. Br. at 4. Arguing that the obligation to organize and label the produced documents rests with the producing party, defendant contends that RCFC 33(d) informs the proper interpretation of RCFC 34(b) to promote "[c]onsistency in the overall operation of discovery rules relating to documents." *Id.* at 5. Rule 33(d) affords a party responding to interrogatories the option of specifying the business records from which the answers may be derived if the burden in ascertaining the answers from the business records is "substantially the same" for both parties.[8] *See* RCFC 33(d).

There is a split in the persuasive authorities concerning whether the option to produce documents as they are kept in the ordinary course of business is an absolute privilege belonging to the party producing the documents. *See, e.g., Bd. of Educ. v. Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 36 n. 20 (N.D.Ill.1984) (view that the rule should not be interpreted as giving the sole choice to the producing party). *But see C & T Assocs., Inc. v. Township of Abington,* 1986 WL 14548, *2 n. 3 (E.D.Pa. Dec.19, 1986) (finding that rule appears to give the producing party the option of how to produce the documents). The split in the case law apparently stems from the 1980 amendment to Fed.R.Civ.P. 34, which was designed to prevent the specific discovery abuse of parties " 'deliberately . . . mix[ing] critical documents with others in the hope of obscuring [the documents'] significance.' " [9] Advisory Committee Note to Rule 34(b), Amendments to the Federal Rules of Civil

---

7. Defendant observes that although, the documents were "Bates numbered," Def.'s Reply at 3, they were "not organized by document production request." *Id.* at 2.

8. Rule 33(d) provides, in pertinent part:
 Where the answer to an interrogatory may be derived . . . from the business records of the party upon whom the interrogatory has been served or from an examination . . . of such business records . . . and the burden of deriving . . . the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from

which the answer may be derived . . . and to afford to the party serving the interrogatory reasonable opportunity to examine . . . such records and to make copies . . . or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.
RCFC 33(d).

9. The pertinent language of RCFC 34(b) is identical to the corresponding provision of Fed. R.Civ.P. 34(b), as amended in 1980. The Federal Circuit has stated that an examination of the "the

Procedure, 85 F.R.D. 521, 532 (1980). *See also* Edward F. Sherman & Stephen O. Kinnard, *Federal Court Discovery in the 80's—Making the Rules Work*, 95 F.R.D. 245, 255 (1983); 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Federal Rules of Civil Procedure § 2213 (2d ed. 1994) ("Whether this provision should be viewed as giving the responding party the option to produce in the manner it prefers has been the subject of some debate."); 7 Moore's Federal Practice—Civil § 34.14[3] (3d ed. 1987) ("[I]t is not clear whether the producing party has the exclusive option to determine which of the two alternative methods will be used.").

It appears that the pivotal consideration in deciding discovery challenges under Rule 34(b), like defendant's in this case, where a large number of documents have been produced based on an "as they are kept in the usual course of business" election is whether the filing system for the produced documents "is so disorganized that it is unreasonable for the [party to whom the documents have been produced] to make [its] own review." *Natural Res. Def. Council, Inc. v. Fox*, 1996 WL 497024, *5 n. 3 (S.D.N.Y.1996). *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610–11 (D.Neb.2001) ("producing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34"); *Rowlin v. Alabama Dep't of Public Safety*, 200 F.R.D. 459, 462 (M.D.Ala.2001) (finding producing party may elect how to produce its records "provided that the records have not been maintained in bad faith"); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976) (stating that a party "may not excuse itself from compliance with Rule 34 ... by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition"). Here, defendant has made no allegation that plaintiff's filing system is "so disorganized" that defendant is unable to review the documents. Rather, the gravamen of

general federal law interpreting the corresponding Federal Rule of Civil Procedure [is] persuasive" in the interpretation of the Rules of the Court of Federal Claims. *Wheeler v. United States*, 11 F.3d 156, 157 n. 1 (Fed.Cir.1993).

defendant's complaint is that the large volume of produced documents (more than 38,000 pages of records by plaintiff's own estimate) is burdensome. *See* Pl.'s Supp. Reply at 3. It is the view of the court, based on its review of the authorities and the facts presented here, that defendant's objection to the production of requested documents based on the volume alone is insufficient to trigger relief from the court. Moreover, the court observes that defendant may avail itself of additional discovery methods to assist in its review of the produced documents, including conducting a Rule 30(b)(6) deposition of those individuals having knowledge about the document production. For the foregoing reasons, the court DENIES defendant's motion with respect to Document Request Nos. 1–5.

With respect to Document Request No. 43, defendant reasons that, because "no reasonably prudent contractor would dispose of such potentially important [job cost] records, especially a contractor ... with claims against the government," Def.'s Reply at 5, plaintiff must be compelled to produce responsive documents or to describe any missing responsive documents that plaintiff once possessed and to state what happened to the documents. *Id.* at 6. Document Request No. 43 seeks "[a]ny and all job cost reports, analyses, or other documents relating to periodic monitoring of costs incurred by Renda to perform the Contract." Def.'s App. 26. Because such documents are particularly relevant evidence with respect to plaintiff's claim, the court GRANTS defendant's motion with respect to the production of any responsive documents to Document Request No. 43. On or before September 12, 2003, plaintiff shall indicate whether it has produced any responsive documents to Document Request No. 43. If such documents existed but are now missing, plaintiff shall respond by describing the missing documents and stating what happened to the documents.[10]

### III. Conclusion

For the foregoing reasons, the court orders the following:

10. With respect to defendant's request that plaintiff produce a privilege log in support of its

1. The court GRANTS plaintiff's motion with respect to the computer back-up tapes and the contracting officer's hard drive. As soon as reasonably practicable, defendant shall produce at its costs those back-up tapes that were created on and after March 8, 2000 and to provide plaintiff with access to Mr. Benero's hard drive in accordance with the terms of the Protective Order Regarding Electronic Discovery filed with the court on July 29, 2003. Defendant shall produce those back-up tapes that pre-date March 8, 2000 to plaintiff at plaintiff's expense in accordance with the terms of the Protective Order Regarding Electronic Discovery filed with the court on July 29, 2003.

2. The court DENIES defendant's motion with respect to plaintiff's responses to Document Request Nos. 1–5.

3. The court GRANTS defendant's motion with respect to Document Request No. 43. On or before September 12, 2003, plaintiff shall produce any responsive documents to Document Request No. 43 or if such documents existed but are now missing, describe the missing documents and state what happened to the documents.

IT IS SO ORDERED.

objection to Request Nos. 6, 12, 15, 16, 40, and 41 of Defendant's First Request for Production of Documents, defendant states that "Renda's blanket privilege objections ... do not describe the nature of the documents not produced in a manner that [permits] the Government to assess the applicability of the privileges asserted, as required by RCFC 26(b)(5)." Def.'s Compel Mot. at 12.

Plaintiff responds that it has produced a privileged document log and attaches a copy of the privilege log that was "thought" to have been hand-delivered to defendant's counsel on January 21, 2003. See Pl.'s Resp. at 1–2; Exhibit A to Response by Renda Marine, Inc. to Defendant's Motion to Compel at 3 (Affidavit of Cheryl Moseley).

Defendant challenges that one of the documents listed on the privilege log, specifically, the "fax cover sheet" from Barry Smith of Pathfinder Construction Consulting, Inc. to Renda's counsel dated November 7, 2000, may not be exempt from disclosure. Def.'s Reply at 6–7. In its supplemental responses to Interrogatory No. 1, plaintiff has identified Mr. Smith as an expert witness it expects to call at trial. Id. at 7.

During the telephonic status conference held on July 3, 2003 to address the parties' motions, plaintiff agreed that the document "isn't privileged" and indicated that the document had been faxed to defendant. Transcript of July 3, 2003 Telephonic Status Conference (Tr.) at 2. Accordingly, defendant's motion to compel the production of the fax cover sheet of Barry Smith is now MOOT.

Defendant also challenges plaintiff's initial and amended responses to its second request for document production which seeks discovery of the documents which plaintiff's expected trial experts have reviewed and the documents on which they have relied, including the engagement documents. Def.'s Reply at 11–12. Defendant points out that plaintiff initially invoked the attorney-work product privilege and did not produce any documents, but in its amended responses, plaintiff made the contradictory statements that " '[n]o known documents exist at this time,' " id. at 12, and that " '[a]s far as Renda can determine, all of such documents have been produced to Defendant.' " Id. at 13. After reviewing all of the produced documents in this case, defendant asserts that plaintiff has failed to produce any of the work papers or reports of Messrs. Smith and McCullough and must be compelled to do so. Id. at 13.

During the telephonic status conference held on July 3, 2003, plaintiff agreed to produce "Mr. Smith's file materials if he has any more" and to produce the file materials of Mr. McCullough "if [he] has any." Tr. at 4. Based on this agreement, defendant's motion to compel plaintiff's response to Interrogatory No. 1 of Defendant's First Set of Interrogatories and Request for Production of Documents and the related document production requests, specifically Request Nos. 1–3 of Defendant's Second Request for Production of Documents, is MOOT.